R. Joseph Trojan CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: 310-777-8399
Facsimile: 310-777-8348

Attorney for Defendant,
California Expanded Metal Products Co.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Seal4Safti, Inc., a Washington corporation, <br><br> Plaintiff, <br><br> California Expanded Metal Products Co., a California company, <br><br> Defendant. | CASE NO. 2:20-cv-10409 −MCS−JEM <br><br> **REDACTED DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date: January 24, 2022 <br> Time: 9:00 a.m. <br> Place: Courtroom 7C <br><br> [Assigned to the Honorable Mark C. Scarsi] |

TROJAN LAW OFFICES
BEVERLY HILLS

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................ 1

II.  ARGUMENT ..................................................................... 2

A.   Invalidity Standard ................................................... 2

B.   The Klein Patents Are Not Indefinite ............................ 3

C.   CEMCO Is Not Judicially Estopped ............................. 4

D.   The '365 Patent Is Not Invalid .................................... 4

1.   The Pilz '643 Patent Is Not Prior Art ........................ 4

2.   Presumption of Validity of the Klein Patents .............. 5

3.   S4S Has Failed to Establish a Prima Facie Case that the '365 Patent Is Obvious ................................ 6

a.   Law on Obviousness: the Graham Factors ..................... 6

b.   The '365 Patent's Invention Is Nonobvious in the Scope of the Crowded Art ................................ 6

c.   S4S Failed to Establish that It Would Have Been Obvious to Combine the Prior Art as Claimed in the '365 Patent ............................ 7

d.   The Egri '041 Patent Cannot be Combined with the Other Prior Art ................................ 8

e.   The Klein '404 Patent Teaches Away from the Claimed Invention ................................ 9

f.   A POSITA Would Not Have Relied on the Pilz '643 Patent or the '434 Provisional Application ................................ 10

g.   S4S Failed to Establish that Combination Would Work as Claimed in the '365 Patent ................ 11

TROJAN LAW OFFICES
BEVERLY HILLS

-i-

TROJAN LAW OFFICES
BEVERLY HILLS

h.   Battle of the Experts Create Genuine Dispute .................................................... 11

4.   Secondary Considerations Raise a Genuine Dispute of Material Fact ................................................................ 111

a.   Long Felt Need of the Solution in the '365 Patent................................................................. 12

b.   "Commercial Success"................................................ 13

i.   Commercial Success of Patented Products as Evidenced by BlazeFrame's Sales ................................. 13

ii.   Commercial Success of the Patented Products as Evidenced by ClarkDietrich's Sales .............................. 14

iii.   Evidence of Nexus Between Commercial Success and Patented Feature ........................................ 14

5.   The Dependent Claims of the Klein '365 Patent Are Nonobvious ................................................................ 155

E.   S4S Has Failed to Establish a Prima Facie Case that the Klein '526 Patent Is Obvious................................................................. 166

F.   S4S Has Failed to Establish a Prima Facie Case that the Klein '718 Patent Is Obvious................................................................. 166

G.   S4S Has Failed to Establish a Prima Facie Case that the Klein '314 Patent Is Obvious................................................................. 166

H.   S4S Has Failed to Establish a Prima Facie Case that the Pilz '389 Patent Is Invalid................................................................. 177

1.   Safti-Seal Reference Is Not Prior Art to the '389 Patent ........ 177

a.   Priority Date of '389 Patent ........................................... 17

b.   No Anticipation by the Safti-Seal Reference................. 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      2.     The Klein Patents Do Not Anticipate Claims 1, 7, and 12 of the '389 Patent ................................................................... 19

      3.     The '389 Patent Is Not Obvious ............................................... 200

          a.     The PTO Considered the Murch '066 patent, the Herren '788 Patent, and the Klein '404 Patent ........ 20

          b.     No Motivation to Combine any References ........ 20

I.     No Inequitable Conduct ....................................................................... 211

J.     Damages Should Not Be Excluded .................................................... 222

III.  CONCLUSION ............................................................................................ 233

TROJAN LAW OFFICES
BEVERLY HILLS

-iii-

# TABLE OF AUTHORITIES

**Cases**                                                                     **PAGE**

*Abbott Lab'ys v. Sandoz, Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008) ............................................................. 21

*Application of Neave*,
   370 F.2d 961 (C.C.P.A. 1967) .................................................................. 6

*CEMCO v. ClarkDietrich, Klein, and BlazeFrame*,
   Case No. 2:12-cv-10791-DDP ................................................................... 1

*Crocs, Inc. v. Int'l Trade Comm'n*,
   598 F.3d 1294 (Fed. Cir. 2010). ............................................................ 14

*E.I. Du Pont de Nemours & Co. v. Cetus Corp.*,
   No. C-89-2860 MHP,
   1990 WL 305551 (N.D. Cal. Dec. 3, 1990)........................................... 11

*Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*,
   99 F. App'x 911 (Fed. Cir. 2004).......................................................... 11

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) .............................................................. 3

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y.1970) ....................................................... 23

*Graham v. John Deere Co.*,
   383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) ........................... 6, 11

*Hoechst Celanese Corp. v. BP Chemicals Ltd.*,
   78 F.3d 1575 (Fed. Cir. 1996) .............................................................. 19

*In re McDaniel*,
   293 F.3d 1379 (Fed. Cir. 2002). .......................................................... 21

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

*In re Mouttet*,
    686 F.3d 1322 (Fed. Cir. 2012) ............................................................ 9

*In re Vaidyanathan*,
    381 F. App'x 985 (Fed. Cir. 2010) ................................................... 7, 8

*Juicero, Inc. v. iTaste Co.*,
    No. 17-CV-01921-BLF,
    2017 WL 4676280 (N.D. Cal. Oct. 17, 2017) .................................... 5

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007) ................... 7

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339 (Fed. Cir. 2001) .......................................................... 10

*Merck & Cie v. Gnosis S.P.A.*,
    808 F.3d 829 (Fed. Cir. 2015) ............................................................ 12

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) .......................................................... 13

*Microsoft Corp. v. I4I Ltd. P'ship*,
    564 U.S. 91, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011) ..................... 3

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
    719 F.3d 1346,  (Fed. Cir. 2013) .......................................................... 3

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006) .......................................................... 14

*Richardson–Vicks, Inc. v. Upjohn Co.*,
    122 F.3d 1476, 44 U.S.P.Q.2d 1181 (Fed. Cir. 1997). ........................ 6

*Rockwell Int'l Corp. v. United States*,
    147 F.3d 1358 (Fed. Cir. 1998) .......................................................... 12

*Shire LLC v. Amneal Pharm., LLC*,
    802 F.3d 1301 (Fed. Cir. 2015) ............................................................ 5

*SmithKline Beecham Corp. v. Apotex Corp.*,

  403 F.3d 1331 (Fed. Cir. 2005) ................................................................... 3

*Stone Basket Innovations, LLC v. Cook Med. LLC*,

  892 F.3d 1175 (Fed. Cir. 2018) ................................................................... 5

*Stratoflex, Inc. v. Aeroquip Corp.*,

  713 F.2d 1530 (Fed. Cir. 1983) ................................................................. 12

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,

  492 F.3d 1350, (Fed. Cir. 2007) ................................................................ 11

*ZUP, LLC v. Nash Mfg., Inc.*,

  896 F.3d 1365 (Fed. Cir. 2018). ................................................................ 12

**Statutes**

35 U.S.C. § 282 ................................................................................... 3, 19

35 U.S.C §§ 102/103 ........................................................................... *passim*

TROJAN LAW OFFICES
BEVERLY HILLS

-vi-

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM AND POINTS OF AUTHORITY

Defendant California Expanded Metal Company ("CEMCO") respectfully submits this Opposition to Plaintiff Seal4Safti, Inc.'s ("S4S") Motion for Summary Judgment ("Mot.") (Dkt. #74-1) on S4S's claims for declaratory judgment of patent invalidity as to U.S. Patents 7,681,365 ("the '365 Patent"), 7,814,718 ("the '718 Patent"), 8,136,314 ("the '314 Patent"), and 8,151,526 ("the '526 Patent") (collectively "**the Klein Patents**") and U.S. Patent No. 10,406,389 ("**the Pilz '389 Patent**").

## I.    INTRODUCTION

S4S's summary judgment motion must be denied because there are multiple issues concerning the equity, law, and facts relating to S4S's invalidity claims against the Klein Patents and the Pilz '389 Patent.

First, as a matter of equity, the Court need not consider S4S's summary judgment motion as to the Klein Patents because S4S is barred by assignor estoppel for the reasons discussed in CEMCO's motion for summary judgment filed on December 20, 2021.  (Dkt. #79-1.)  This is at least the third attempt at invalidating the Klein Patents by Mr. Klein and those in privity with him.

Second, as a matter of law, many of S4S's invalidity claims fail on their face because S4S relies on references that do not qualify as prior art.  At least two of S4S's references postdate the patents it seeks to invalidate.

Third, there are disputed material facts regarding S4S's claims that the inventions claimed in the Klein Patents are obvious.  Indeed, the disputes of material fact were raised by none other than Mr. Klein himself in a prior case, *CEMCO v. ClarkDietrich, Klein, and BlazeFrame*, Case No. 2:12-cv-10791-DDP ("the 10791 case").  (Dkt. #79-1.)  In the 10791 case, Mr. Klein, who is now S4S's employee, submitted a lengthy 47-page declaration and an expert report *in defense* of the validity of the Klein Patents.  (Statement of Additional Facts (SAF) 69.)

-1-

That alone creates sufficient triable issues of fact as to the alleged invalidity of the Klein Patents.

As to the Pilz '389 Patent, many of the prior art references that S4S relies on to argue that the patent is invalid were considered by the U.S. Patent Office ("PTO").  S4S fails to present clear and convincing evidence that the PTO erred in allowing the patent.

Further, S4S's argument that the Pilz '389 Patent was procured by inequitable conduct is utterly meritless.  Moreover, S4S's inequitable conduct claim fails because there are numerous disputes of fact.  S4S argues that CEMCO's prior litigation positions with respect to the Klein Patents are inconsistent with the positions CEMCO took in prosecuting the Pilz '389 Patent.  However, there are triable issues of fact regarding the difference in the inventorship of Klein Patents and the Pilz '389 Patent, the differences in their respective specifications, and the differences in their claims, all of which preclude summary judgment.

Lastly, there are also triable issues of fact that preclude summary judgment against CEMCO's claim for damages.  CEMCO produced numerous documents in support its damages model and S4S cannot be heard to complain that it lacks disclosure of CEMCO's damages.  Based on the foregoing, S4S's summary judgment motion must be denied in its entirety.

## II.    ARGUMENT

### A.    Invalidity Standard

The Supreme Court teaches that "the presumption of patent validity had long been a fixture of the common law. According to its settled meaning, a defendant raising an invalidity defense bore 'a heavy burden of persuasion,' requiring proof of the defense by clear and convincing evidence. That is, the presumption encompassed not only an allocation of the burden of proof but also an imposition of a heightened standard of proof." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91,

TROJAN LAW OFFICES
BEVERLY HILLS

102, 131 S. Ct. 2238, 2246, 180 L. Ed. 2d 131 (2011) (citation omitted); *see also* 35 U.S.C. § 282; *see also*, *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1353 (Fed. Cir. 2013) ("[T]he burden of persuasion remains with the challenger during litigation because every issued patent is entitled to a presumption of validity.").

### B.     The Klein Patents Are Not Indefinite

S4S argues that the Klein Patents are indefinite because it contends the Court's claim construction of "intumescent strip" fails to inform a POSITA about the scope of the invention. (Mot. at 3:13-18.) S4S's argument is flawed as a matter of law. The Federal Circuit teaches that "[o]nce a district court has construed the relevant claim terms, … then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). Undeterred, S4S challenges the Court's claim construction.

The Court construed "intumescent strip" to mean "a strip that comprises a substance that intumescent material" expands or swells when exposed to heat." (SDF 1.[1]) S4S contends that "[i]f any number of layers or materials can be added to an intumescent strip after the manufacturing process . . . then it is not possible for the public to determine the scope of the term." (Mot. at 3:19-22.) However, the Federal Circuit teaches that "[t]he test for indefiniteness *does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement*, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340–1341 (Fed. Cir. 2005) (emphasis added). Here, the Court correctly concluded that the number of "layers" of an intumescent strip relates to infringement, not definiteness. (SAF 73).

---

[1] Defendant's Statement of Disputed Fact and Genuine Issues

TROJAN LAW OFFICES
BEVERLY HILLS

1

2

3

4

5

At the very least, there is a triable issue of fact as to whether the claim delineates to a skilled artisan the bounds of the invention because CEMCO's expert, Mr. Don Pilz, opined that the term intumescent strip is not indefinite because any "strip" with intumescent material is an "intumescent strip" regardless of the number of "layers" of additional material.  (SAF 74.)

6

### C.    CEMCO Is Not Judicially Estopped

7

8

9

S4S argues that CEMCO is judicially estopped from arguing that the Klein Patents are valid based on CEMCO's prior litigation positions.  (Mot. at 11:10-11.) S4S has it backwards.  If estoppel is applicable at all, assignor estoppel bars S4S.[2]

10

11

12

13

14

15

S4S contends that "Mr. Klein accepted the Klein Patents' invalidity and **relinquished them as worthless**."  (Mot. at 12:7-10 (emphasis added).)  This is precisely the type of argument that Judge Pregerson rejected in applying assignor estoppel against Klein the first of two times: "[t]o allow Blazeframe to now argue, despite its having received payment from CEMCO, that 'what was sold is worthless' would be grossly unfair."  (SAF 75.)

16

17

18

19

20

21

Incredibly, S4S argues that "CEMCO did not pay $800,000 for the Klein Patents" at all.  (Mot. at 1:28-29:1.)  S4S's argument is flatly contradicted by the settlement agreement between CEMCO and Mr. Klein, which states that "Klein and BlazeFrame will assign their BlazeFrame-related patent rights to CEMCO for the payment of $800,000 in the licensing fees."  (SAF 76.)  S4S and Mr. Klein's gamesmanship with respect to assignor estoppel must stop here.

22

### D.    The '365 Patent Is Not Invalid

23

24

S4S alleges that claim 1 of the '365 Patent is obvious in view of the Klein '404 patent, the Pilz '643 patent, and the Egri '041 patent.  (Mot. at 9:10-11.)

25

### 1.    The Pilz '643 Patent Is Not Prior Art

26

S4S asserts the Pilz '643 patent as prior art to the Klein Patents.  (Mot. at 8:1-

27

28

[2] *See* CEMCO's Motion for Summary Judgment (Dkt. #79-1).

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

2.) The Pilz '643 patent claims priority to Provisional Application 60/957,434 ("the Pilz '434 provisional application") filed on August 22, 2007. (SAF 77.) S4S defines the Pilz '643 patent to include the Pilz '434 provisional application. (Mot. at 8, fn. 6.)

However, S4S relies on Fig. 9 of the Pilz '643 patent for its invalidity arguments, but that figure is not supported by the Pilz '434 provisional application. (SAF 78.) Fig. 9 shows intumescent on the top and sides of the track whereas the Pilz '434 provisional application only has intumescent on the top of the track. (SAF 79.) Therefore, Fig. 9 of the Pilz '643 patent is entitled only to its *filing date* of January 11, 2008, not 2007.

Thus, the Pilz '643 patent is not prior art because it post-dates the '365 Patent's priority date. As such, S4S's obviousness combination relying on the Pilz '643 patent fails at the outset.[3]

## 2.    Presumption of Validity of the Klein Patents

The presumption of validity is especially strong with respect to the '365 Patent because S4S's key prior art was considered by the PTO. *See Juicero, Inc. v. iTaste Co.*, No. 17-CV-01921-BLF, 2017 WL 4676280, at *6 (N.D. Cal. Oct. 17, 2017) ("In such cases where the challenger relies on art that the examiner already considered, the presumption of validity is the strongest."). As listed on the face of the '365 Patent, the examiner considered the Klein '404 patent (referenced by its Publication No. 2006/0137293).[4] (Pilz Decl., Ex. A at Ex. 1, p. 2.) The PTO also

---

[3] Even assuming that the Pilz '643 patent could claim priority to the Pilz '434 provisional application, there is still a genuine dispute of material fact as to whether the August 22, 2007, priority date would be enough to make it prior art to the Klein Patents because Mr. Klein contended in the prior litigation that he conceived of the invention in May 2004, which is disputed. (SAF 80.)

[4] *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1179 (Fed. Cir. 2018). ("When prior art is listed on the face of a patent, the examiner is

TROJAN LAW OFFICES
BEVERLY HILLS

asserted the Egri '041 patent, which Mr. Klein overcame.  (SAF 81.)  Since the PTO considered the Klein '404 patent and the Egri '041 patent, yet granted the '365 Patent over them, the presumption of validity is strong.

### 3.   S4S Has Failed to Establish a Prima Facie Case that the '365 Patent Is Obvious

#### a.   Law on Obviousness: the Graham Factors

Even if the PTO had not consider S4S's key prior art, S4S still fails to present clear and convincing evidence of obviousness.  Obviousness is a question of law based on underlying factual determinations. *Richardson–Vicks, Inc. v. Upjohn Co.,* 122 F.3d 1476, 1479, 44 U.S.P.Q.2d 1181, 1183 (Fed. Cir. 1997). These underlying determinations include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness, sometimes termed secondary considerations. *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

#### b.   The '365 Patent's Invention Is Nonobvious in the Scope of the Crowded Art

The crowded scope of prior art weights against obviousness.  *Application of Neave*, 370 F.2d 961, 967 (C.C.P.A. 1967) ("[I]t is precisely because the claimed compound is in a crowded art, that what might otherwise appear to be relatively insignificant property differences, must be regarded as major. Naturally smaller steps forward in the art are required for (a patentable) invention in crowded arts.").

At the time of the effective filing date of the '365 Patent (based on its October 4, 2007 priority date), the PTO had already granted approximately **177** patents containing the word "intumescent" in U.S. Class 52/232, which is the

presumed to have considered it.") (internal quotations omitted; citing *Shire LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015)).

1
2
3
4

classification of the '365 Patent.  (SAF 82.)  More particularly, the '365 Patent itself identifies some **66** prior art references on its face, including the Klein '404 patent (referenced by its Publication No. 2006/0137293) and the Egri '041 patent. (SAF 83.)

5
6
7
8
9
10
11

While S4S contends that "[t]he problem of firestopping the head-of-wall gap . . . was also known in the prior art, as was the ability to apply an intumescent strip to the head-of-wall construction gap," the specific placement of the strip was not taught by the prior art as discussed further below.  Mr. Klein himself explained, "the **proper placement** of an appropriately sized heat-expandable intumescent material strip on the outer flange surfaces of a header track" was key to his solution. (SAF 84 (emphasis added).)

12
13
14

### c.    S4S Failed to Establish that It Would Have Been Obvious to Combine the Prior Art as Claimed in the '365 Patent

15
16
17
18
19
20
21
22

The Supreme Court teaches that whether a combination is obvious under § 103 is based in part on whether "there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions[] [such that] a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421, 127 S. Ct. 1727, 1742, 167 L. Ed. 2d 705 (2007).  The Supreme Court further explained that "[i]f this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *Id.*

23
24
25
26
27

S4S argues that "a POSITA would have understood from common sense and the prior art discussed above that the intumescent strip would have to be affixed on one or both of the outside surfaces of the header, i.e., either on the web or one or both of the sidewalls."  (Mot. at 11:18-23.)  The Federal Circuit teaches that determinations of obviousness should be supported by an explanation of "the logic

28

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4

or common sense that leads the examiner to believe the claim would have been obvious." *In re Vaidyanathan*, 381 F. App'x 985, 994 (Fed. Cir. 2010). S4S does not explain how "common sense" dictates that the "intumescent strip would have to be affixed on one or both of the outside surfaces of the header."

5
6
7
8
9
10
11

S4S's assertion that the '365 Patent is obvious over the prior art is based on impermissible hindsight. *In re Vaidyanathan*, 381 F. App'x 985, 994 (Fed. Cir. 2010) ("Obviousness is determined as a matter of foresight, not hindsight."). At the time of the patent, a POSITA would not have had the motivation to combine the prior art as suggested by S4S. (SAF 85.) At the very least, there are myriad triable issues of fact as to *how* and *why* the prior art could be combined to make the inventions as claimed in the '365 Patent for the following reasons.

12
13

### d.   The Egri '041 Patent Cannot be Combined with the Other Prior Art

14
15
16
17
18
19
20
21
22
23
24
25
26

A POSITA would not combine the Egri '041 patent with the other references because the device taught by Egri is a *bottom* track for a wall assembly. (SAF 86.) In fact, Egri device cannot be used in a *head-of-wall* assembly because it cannot accommodate ceiling deflection, which is a critical aspect of the '365 Patent. (SAF 87.) As disclosed in Fig. 1 of the Egri '041 patent, the intumescent tape interferes with the vertical movement of the adjacent wallboard and the movement would damage the intumescent tape. (SAF 88.) Damage to the intumescent tape would prevent it from filling the deflection joint. (SAF 89.) As Mr. Pilz explained, "a POSITA reading the Egri '041 patent would not have any expectation that a bottom track as taught by Egri could be successfully converted into a top track that uses an intumescent strip to seal a construction joint and that could still accommodate ceiling deflection." (SAF 90.) Due to the potential of damage to the intumescent from the configuration disclosed in the Egri '041 patent, there is at least a triable

TROJAN LAW OFFICES
BEVERLY HILLS

27
28

-8-

1   issue of fact as to whether a POSITA would "anticipate success" by combining Egri
2   '041 patent with any other prior art such as to make obvious the '365 Patent.

### e.   The Klein '404 Patent Teaches Away from the Claimed Invention

A POSITA would also not have relied on the Klein '404 patent, much less combine it with the Egri '041 patent, because the Klein '404 patent teaches away from the invention as claimed in the '365 Patent.  *In re Mouttet*, 686 F.3d 1322, 1333–34 (Fed. Cir. 2012) ("[a] reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." (internal citation omitted)).

Klein '404 patent teaches a head-of-wall arrangement where the intumescent strip is attached to a separate L-shaped channel member on ***the outside of the wallboard,*** not on the sidewall of the header (i.e., not on the inside of the wallboard as claimed in the '365 Patent).  (SAF 91.)  In the Klein '404 patent, the channel member and the intumescent material are installed *after* the wallboard is put up. (SAF 92.)  As Mr. Pilz explains, a POSITA would know that the use of the L-channel avoids damaging the intumescent material when the wallboard is installed. (SAF 93.)  Mr. Pilz opines that if the intumescent material is affixed to the header first and then the wallboard is installed on top of it (as in the '365 Patent), the result would have been unpredictable because one would not know whether the intumescent material might be damaged.   (SAF 94.)   Additionally, if the intumescent material is behind the wallboard, the result would be unpredictable as to whether the expansion of the intumescent behind the wallboard during a fire would compromise the integrity of the wall or if it would expand and fall out of the deflection gap during a fire.  (Pilz Decl., Ex. A at p. 23.)

TROJAN LAW OFFICES
BEVERLY HILLS

-9-

Mr. Klein's own expert, Mr. Pessiki, also opined that "[t]he Klein '404 Patent discloses an *exterior* fireblocking structure that is *separate and distinct from the header track* in a wall assembly, *and not reasonably susceptible to being combined with the header track systems disclosed in either Pilz reference*." (SAF 96 (emphasis added).)

In short, there was no motivation to combine the Klein '404 patent (with the intumescent strip on the outside of the wallboard) with the Egri '041 patent (with the intumescent strip on a bottom track and under the wallboard). While the Klein '404 patent may have disclosed a top header, it taught away from affixing the intumescent tape directly to the header by teaching that the intumescent tape is affixed on the L-shaped channel. *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1354 (Fed. Cir. 2001) ("We have noted elsewhere, as a 'useful general rule,' that references that teach away cannot serve to create a prima facie case of obviousness."). S4S does not explain how the bottom track of the Egri '041 patent can be combined with the L-shaped channel of the Klein '404 patent, or what benefit would be gained from combining them.

### f.      A POSITA Would Not Have Relied on the Pilz '643 Patent or the '434 Provisional Application

A POSITA would not have relied on the Pilz '643 Patent because it is not prior art as discussed above. Nor would a POSITA have relied on the Pilz '434 provisional application because the intumescent is on the top web only. (SAF 97.)

As the inventor of the device described the Pilz '434 provisional application, Mr. Pilz stated that the intumescent was placed on the top web for that application to ensure that the intumescent would not fall off the track when it expanded and to ensure that it expanded in the correct direction to ensure the sealing of the construction joint. (SAF 98.)   A POSITA would have been concerned about whether placing the intumescent on the sidewall of the track would damage it.

TROJAN LAW OFFICES
Beverly Hills

TROJAN LAW OFFICES
BEVERLY HILLS

(SAF 99.)  Thus, a POSITA would not have anticipated success by placing the intumescent on the sidewall based on the Pilz '434 provisional application.

### g.    S4S Failed to Establish that Combination Would Work as Claimed in the '365 Patent

Even assuming the prior art references teach all the elements of the '365 Patent, which they do not, S4S has not explained why the combination of these references would work together as claimed in '365 Patent.  The Federal Circuit teaches that the existence of seemingly relevant references does not make an invention "obvious to try" if the prior art simply provides a "broad selection" of choices.  *See Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1359 (Fed. Cir. 2007).  Here, the prior art presented by S4S describe different headers and footers with the intumescent strip in different locations, none of which teach the application of the intumescent strip to the sidewall of the header track as claimed by the '365 Patent would be successful.

### h.    Battle of the Experts Create Genuine Dispute

There is a genuine dispute of material fact as to whether the prior art can be combined based on the disagreement between Mr. Clark, on the one hand, and Mr. Pilz and Mr. Pessiki, on the other, which precludes summary judgment as to obviousness.  *See, e.g.*, *E.I. Du Pont de Nemours & Co. v. Cetus Corp.*, No. C-89-2860 MHP, 1990 WL 305551, at *10 (N.D. Cal. Dec. 3, 1990) ("The findings of PTO and the declarations of the experts submitted by defendant raise genuine issues of fact on the questions of anticipation of '202 by prior art under 35 U.S.C. § 102 and the obviousness of '202 and '195 under 35 U.S.C. § 103."); *see also Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 F. App'x 911, 922 (Fed. Cir. 2004).

### 4.    Secondary Considerations Raise a Genuine Dispute of Material Fact

The Federal Circuit teaches that the Court must further consider "secondary considerations" as part of *Graham* inquiry. *Graham v. John Deere Co.,* 383 U.S. at 17–18; *see also*, *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1366 (Fed. Cir. 1998). Those considerations include "commercial success, long felt but unsolved needs, [and] failure of others." *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 843 (Fed. Cir. 2015). As the Federal Circuit has often noted, "evidence of secondary considerations may often be the most probative and cogent evidence in the record." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983). Such considerations are important because they guard against judicial hindsight. *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1373 (Fed. Cir. 2018). Here, the extensive evidence of secondary considerations further precludes summary judgment.

### a. Long Felt Need of the Solution in the '365 Patent

In 2015 Mr. Klein himself described in a 47-page declaration how he conceived and developed his inventions, which provided an efficient and economical solution to the long-felt need of sealing head-of-wall deflection gaps. (SAF 69.) Prior inventions had relied on the labor-intensive method of stuffing mineral wool into the deflection gap to protect head-of-wall construction joints during a fire. (SAF 105.) As Mr. Pessiki opined, "[r]educing labor costs and improving fire prevention are a long-standing and unresolved need in the construction industry that have therefore been resolved in the Patents-in-Suit." (SAF 106.) Few other cost-effective methods existed. (SAF 107.) For example, Mr. Klein described one such product, the M-track in 2004, which failed to "sufficiently prevent thermal transfer from one side of the wall to the other." (SAF 108.)

Based on the needs in the industry, Mr. Klein recognized that "the proper placement of an appropriately sized heat-expandable intumescent material strip on

TROJAN LAW OFFICES
BEVERLY HILLS

the outer flange surfaces of a header track and at the wall-ceiling interface could be an effective firestop solution." (SAF 84.) Mr. Klein states "that the intumescent material strip positioned [per the Klein Patents] . . . would create a seal between (1) any gaps associated with an uneven or pitted ceiling, and (2) any gaps between the inner wall cavity and the top inner surface of the wallboard (at the head-of-wall construction joint) to thereby prevent the flow of air into or through the inner wall cavity." (SAF 109.) This configuration would also "allow for the up and down movement (dynamic cycling) of the ceiling eliminating conventional 'stuff and spray' firestop materials and related failures and issues." (SAF 110.)

Further, Mr. Klein explained that the "BlazeFrame product [practicing the Klein Patents] provides a cost-effective solution to the problem of head-of-wall construction joint or gap fire and smoke sealing." (SAF 111.) At minimum, the long-felt need fulfilled by the '365 Patent is a triable issue of fact.

### b.   "Commercial Success"

The Federal Circuit teaches that "[c]ommercial success is relevant [to obviousness] because the law presumes an idea would successfully have been brought to market sooner, in response to market forces." *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005).

### i.   Commercial Success of Patented Products as Evidenced by BlazeFrame's Sales

From the very beginning, head-of-wall products made under the '365 Patent (and the other Klein Patents) have been wildly successful because "they provide an easy and economical way to seal head-of-wall joint." (SAF 112.) In fact, during prosecution of the '365 Patent, Mr. Klein submitted a declaration under 37 C.F.R. 1.132 averring to the commercial success of the patented BlazeFrame products. (SAF 113.) Mr. Klein emphasized his sales jumped from $100,000 to $400,000 with limited advertising. (SAF 114.)

The patented products were so successful that Mr. Klein himself took a license for the Klein Patents after he sold them to CEMCO. (SAF 115.) Indeed, it is because these products have been so commercially successful that they have spurred three bitter litigations.

### ii.      Commercial Success of the Patented Products as Evidenced by ClarkDietrich's Sales

CEMCO also licensed the '365 Patent (and the other Klein Patents) to ClarkDietrich. (SAF 116.) Under the license, ClarkDietrich sells the BlazeFrame products that were previously sold by Mr. Klein. As set forth in the Expert Report of Minh Doan from the Washington Case, █████████████████████████

███████████████████████████████████████████████████

(SAF 117.) Thus, the success of the commercial embodiment of the '365 Patent is a strong objective indication of the non-obviousness of the '365 Patent (and the other Klein Patents).

### iii.      Evidence of Nexus Between Commercial Success and Patented Feature

The Federal Circuit teaches that there must be "a nexus between the claimed invention and the commercial success." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311–12 (Fed. Cir. 2006). A "prima facie case of nexus is made when the patentee shows both that there is commercial success, and that the product that is commercially successful is the invention disclosed and claimed in the patent." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1310–11 (Fed. Cir. 2010).

Mr. Pilz states in his expert report that the success of the products practicing the '365 Patent is due the placement of the intumescent strip to seal head-of-wall joints, not the features found in the prior art such as the head of wall assembly

TROJAN LAW OFFICES
BEVERLY HILLS

itself.  (SAF 118.)  As Mr. Pilz explains, this is because "[c]ode regulations require head-of-walls to be fire-resistance.  This is why the products are subject to rigorous testing to meet regulatory code."  (SAF 119.)  *The patented products are successful because they provide an easy and economical way to seal head-of-wall joints that meet code*.  (SAF 120 (emphasis added).)

Mr. Klein himself touted the benefit of the patented feature over existing products at the time.  (SAF 123.)  Mr. Klein stated that "I also realized that this new type of head-of-wall assembly would also allow for the up and down movement (dynamic cycling) of the ceiling eliminating conventional 'stuff and spray' firestop materials and related failures and issues."  (SAF 121.)

Mr. Pessiki also concluded that "the Patents-in-Suit result in a number of significant advantages over the prior art techniques that satisfy [industry] needs." (SAF 122.)   In short, the commercial success of the products under the Klein Patents are attributable to the patented features.

**5.     The Dependent Claims of the Klein '365 Patent Are Nonobvious**

S4S contends that the dependent claims of the '365 Patent "are obvious as well for the reasons set forth above because the dependent claims do not recite any limitations that in themselves would support patentability." (Mot. at 10:3-5.) However, it is statutory law that "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim."  35 U.S.C.A. § 282. Thus, S4S cannot simply conclude that the dependent claims are obvious as they have different limitations.

For example, claim 4 recites that "the fastener head offset distance being about the same or slightly less than the intumescent strip offset distance."  (SAF

-15-

124.)  This limitation is designed to accommodate ceiling deflections.  (SAF 125.)  However, the device in Egri '041 Patent cannot accommodate ceiling deflections and still offer fire resistance because the drywall fasteners are attached to the studs and the bottom track which will prevent any sort of up and down to accommodate ceiling deflection.  (SAF 125.)   S4S's failure to address the specific limitations of the dependent claims means it did not show by clear and convincing evidence that the dependent claims are obvious.

**E.     S4S Has Failed to Establish a Prima Facie Case that the Klein '526 Patent Is Obvious**

S4S arguments with respect to the '526 Patent are identical to the '365 Patent (Mot. at 15:4-7.)  Thus, the '526 Patent is not obvious for the same reasons above.

**F.     S4S Has Failed to Establish a Prima Facie Case that the Klein '718 Patent Is Obvious**

S4S argues that the '718 Patent is obvious based on the prior art above. (Mot. at 13:12-16.)  The only unique reference is the Brady '760 patent, which S4S contends "teaches a dynamic head-of-wall system with slots on the sidewall." (Mot. at 9:1-2.)  Though the Brady '760 patent teaches the use of slots for the head of wall assembly, it does not teach the use of "intumescent strip" on slotted tracks. (SAF 126.)  Since a POSITA would not combine the Klein '404 patent, the Pilz '643 patent, the Egri '041 patent for the reasons discussed above, it follows that a POSITA would have no reason to also combine those references with the Brady '760 patent.  (SAF 127.)

**G.     S4S Has Failed to Establish a Prima Facie Case that the Klein '314 Patent Is Obvious**

S4S asserts that "[a]ll Claims of the '314 Patent are Obvious in Light of the Klein '404 Patent, the Pilz '643 Patent, the Ackerman '085 Patent, and the Egri '041 Patent."  (Mot. at 14:1-3.)  The only unique reference is the Ackerman '085

Patent, which S4S contends "teaches the specific composition of intumescent specified in claim 1 of the '314 Patent." (Mot. at 14:14-15.) The Ackerman '085 Patent is incorporated into the Klein '314 Patent and was already considered by the PTO during prosecution of the Klein '314 Patent. (SAF 128.) Thus, the PTO's allowance of the '314 Patent after considering the Ackerman '085 Patent strengthens its presumption of validity, a presumption that S4S fails to overcome.

**H.     S4S Has Failed to Establish a Prima Facie Case that the Pilz '389 Patent Is Invalid**

The Pilz '389 Patent claims "an elongate fire - block wall component" comprising "a fire-resistant material portion," "a foam material portion," and "an adhesive portion," which are not limitations in the Klein Patents. (SAF 129.)

**1.     Safti-Seal Reference Is Not Prior Art to the '389 Patent**

The Safti-Seal Reference is not anticipatory prior art (Pilz Decl., Ex. A at pp. 29-30) because the Safti-Strip product was not sold until 2017, almost eight years after the priority date of the Pilz '389 Patent. (SAF 130.)

**a.  Priority Date of '389 Patent**

S4S contends that "claims 1-5 and 7-10 of the ['389 Patent] are not entitled to priority from the '277 Application" (Mot. at 15:26-27) and thus should only entitled to a priority date of April 2, 2018 when the patent was filed because the '277 Application does not disclose a "foam material portion" that is stacked on top of the "fire resistant material portion." (*Id.* at 16:3-17.) S4S is wrong.

The '277 Application, in paragraph 5, states that "preferred embodiments of the present invention provide an adhesive fire resistant material strip [and] . . . [i]n one arrangement, a form strip is positioned **adjacent** to the intumescent strip portion." (SAF 131 (emphasis added).) "Adjacent" means "close or near"[5],

_____

[5] https://www.merriam-webster.com/dictionary/adjacent

-17-

TROJAN LAW OFFICES
BEVERLY HILLS

meaning the fire resistant material could be "stacked" next to foam. Thus, the priority date for the '389 Patent is properly September 21, 2009.

Even if not supported by the '277 Application, the '389 Patent also claims priority to 8,353,139 ("Pilz '139 Patent"), which was filed on September 21, 2010, and is a continuation-in-part of the '277 Application. (SAF 132.) The Pilz '139 Patent includes a dependent claim that claims a "fire block strip" where "the foam strip and fire-resistant material strip are co-planar." (SAF 133.) The fact that the "co-planar" limitation in the dependent claim means that the corresponding independent claim is broad enough to encompass a foam strip that is not "co-planar." *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1370 (Fed. Cir. 2016) ("Thus, in a situation where dependent claims have no meaningful difference other than an added limitation, the independent claim is not restricted by the added limitation in the dependent claim."). Thus, at the latest, the priority date would be based on the continuation-in-part filing date September 21, 2010, not 2018. Accordingly, the Safti-Seal Reference (2017) is dated *after September 21, 2009* and is not prior art.

### b.  No Anticipation by the Safti-Seal Reference

Even assuming that Safti-Seal Reference is prior art, which it is not, the Safti-Seal Reference does not disclose every limitation of claims 1, 7, and 12 of the '389 Patent. (Mot. at 18:1-2.)

S4S itself admits that the Safti-Seal Reference only discloses limitations such as "a foam layer, an intumescent layer, and an adhesive layer." (Mot. at 18:9-12 (citation omitted).) S4S omits all limitations of the independent claims of the '389 Pilz Patent except the limitation relating to the "fire block component." For example, claim 1 of the '389 Patent also recites limitations regarding the deflection gap. (SAF 134.) The placement of the elongate fire-block wall component in the deflection gap is important because the Examiner found that "the fire block wall

TROJAN LAW OFFICES
BEVERLY HILLS

component secured to a track by an adhesive portion of the component and the component extending along and sealing a deflection gap; the deflection gap defined by the [track], a stud within the track, and an upper edge of a wall board supported by the stud" were allowable over the prior art.  (SAF 135.)  S4S does not actually show how the Safti-Seal Reference product is used to seal a deflection gap.  Thus, it does not disclose every limitation of the invention.

### 2.  The Klein Patents Do Not Anticipate Claims 1, 7, and 12 of the '389 Patent

S4S argues that "if the Klein Patents are interpreted to cover an intumescent strip with an attached foam layer or tape layer attached to a header track, then the Klein Patents disclose each and every limitation of claims 1, 7, and 12, as they would cover a product with a foam or tape layer attached to an intumescent layer." (Mot. at 18:18-21.)

S4S admits that the Klein Patents do not actually disclose "an attached foam layer" or "a tape layer attached to the fire-resistant material layer," because its argument depends on an interpretation of the independent claims in which those limitations *could be* within the scope of the claims.  Even S4S's expert admits that "[n]one of the Klein Patents discuss or contemplate that an 'intumescent strip' can include a foam thermal barrier which is added after the manufacturing process." (SAF 136.)  Just because the Klein Patents are entitled to an interpretation that the intumescent strip can include materials in addition to the intumescent (for the purposes of determining infringement), it does not mean that the Klein Patents actually disclose the specific limitations (i.e., foam or tape) that are claimed in the '389 Patent (for the purposes of determining validity). (SAF 137); *see also, Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1582 (Fed. Cir. 1996).

TROJAN LAW OFFICES
BEVERLY HILLS

-19-

TROJAN LAW OFFICES
BEVERLY HILLS

Lastly, S4S offers no evidence with respect to the dependent claims of '389 Patent (Mot. at 18:22-19:1) and thus fails to carry its burden with respect to the alleged anticipation of those claims.

### 3. The '389 Patent Is Not Obvious

S4S contends "[e]ach element of claims 1, 7, and 12 of the '389 Patent is obvious in light of the Klein Patents, the Herren '788 Patent, the Murch '066 Patent, and the Klein'404 Patent." (Mot. at 19:4-6.)

### a. The PTO Considered the Murch '066 patent, the Herren '788 Patent, and the Klein '404 Patent

At the outset, the PTO previously considered and allowed the '389 Patent over the Herren '788 Patent[6] and the Murch '066 Patent (SAF 138) and the Klein '404 patent (SAF 139).

### b. No Motivation to Combine any References

The Murch '066 Patent does not render the claims of the '389 Patent obvious because S4S has not set forth any motivation to combine the Murch '066 Patent with the other references. (*See* Mot. at 19:17-20.) Essentially, S4S contends Murch teaches a "multi-layered" intumescent strip. (Mot. at 19:10-12.)

However, the Murch '066 Patent does not actually disclose a "multi-layered" intumescent strip. Instead, Murch teaches a laminate "protective overlay" that protects a heat-sensitive substrate such as "asbestos, glass wool or cardboard, adhered to the inner surface of the intumescent layer." (SAF 140.)    Foam is only disclosed in the Murch '066 patent as one of the substrates protected by the "overlay." (SAF 141.)  The overlay itself is not foam.  Thus, the Murch '066 patent does not actually disclose "a foam material portion attached to the fire-resistant material portion" (claims 1 and 7) or "a tape layer attached to the fire-resistant material layer" (claim 12) as taught by the '389 Patent.  (SAF 142.)

---

[6] Notably, the Clark Expert Report does not analyze the Herren '788 Patent at all.

Also, the intumescent laminate of the Murch '066 patent was not applied to a head-of-wall assembly to protect a deflection gap.  (SAF 143.)  A POSITA would not know whether the foam might prevent the intumescent material from activating and deploying as necessary from the disclosure of Murch '066 Patent.  (SAF 144.)  In the '389 Patent, the foam barrier functions to insulate the metal track, enhance protection against fire, and protect the intumescent strip.  (SAF 145.)  None of this was taught in the Murch '066 patent.  (SAF 146.)  Thus, a POSITA would have no reason to apply the Murch '066 patent to a header track or to any of the other references.  (SAF 147.)

Lastly, S4S states that "Dependent claims 2-6, 8-11, and 13-16 of the '389 Patent are obvious as well for the reasons set forth above..."  (Mot at 19:23-26.)  However, the dependent claims are entitled to its individual presumption of validity.  For example, dependent claims 6 and 11 recite that the "the fire-resistant material portion and the foam material portion are positioned side-by-side." (SAF 148.)  S4S does not show how the "side-by-side" limitation in these dependent claims are obvious and thus fails to carry its burden.  (SAF 149.)

## I.    No Inequitable Conduct

The Federal Circuit teaches that "[i]nequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence. Mistake or negligence, even gross negligence, does not support a ruling of inequitable conduct."  *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1353 (Fed. Cir. 2008) (quotation and citation omitted).)

S4S accuses CEMCO of two inequitable conduct concerning the Pilz '389 Patent.  First, S4S contends that "CEMCO's failure to disclose the Safti-Seal Reference in the '389 Patent application may even rise to the level of inequitable

-21-

conduct." (Mot. at 18, fn. 13.)   As discussed above, the Safti-Seal Reference is not prior art to the '389 Patent so CEMCO did not need to disclose it.

Second, S4S contends that CEMCO "intentionally conceal[ed] contrary positions [from the PTO that] CEMCO was simultaneously taking in the Washington Litigation." (Mot. at 20:19-22.)  S4S's argument does not make sense. The Federal Circuit teaches that "[i]t is well settled that the prosecution of one patent application does not affect the prosecution of an unrelated application." *In re McDaniel*, 293 F.3d 1379, 1387 (Fed. Cir. 2002). Since the '389 Patent is not related to Klein Patents (other than CEMCO's common ownership), CEMCO's *litigation* position with respect Klein Patents is irrelevant to its prosecution of the '389 Patent.

Further, the Pilz Patent does not even use the term "intumescent strip," which was the central term in the Washington litigation concerning the Klein Patents.  S4S itself admits that the '389 Patent uses the term "fire-block wall component" (Mot. at 22: 15-19.)   As the '389 Patent has a different inventor, is supported by a different specification, and uses different claim terms, S4S has not proven by clear and convincing evidence that CEMCO engaged in any inequitable conduct such that the '389 Patent is unenforceable.

### J.    Damages Should Not Be Excluded

S4S asserts that CEMCO failed to disclose any computation or analysis of damages or any expert testimony on damages and "the Court should dismiss CEMCO's request for compensatory damages." (Mot at 25:14-16.)  CEMCO has produced documents supporting its claim for damages, █████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ (SAF 152.)   These

TROJAN LAW OFFICES
BEVERLY HILLS

licensing agreements provide a sufficient basis for damages based on a lost profits or a reasonable royalty based on S4S's sales.  *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.1970).  CEMCO has requested that S4S supplement its sales, but it has failed to do as of the date of this opposition.  (SAF 153.)  It is disingenuous for S4S to represent that CEMCO has produced no evidence of damages when S4S is withholding that very evidence.

## III.   CONCLUSION

For the foregoing reasons, S4S's motion for summary judgment should be denied in its entirety.

Respectfully submitted,

TROJAN LAW OFFICES
by

January 3, 2022

/s/ R. Joseph Trojan
R. Joseph Trojan
Attorney for Defendant,
CALIFORNIA EXPANDED METAL
PRODUCTS COMPANY

TROJAN LAW OFFICES
BEVERLY HILLS

-23-