R. Joseph Trojan CA Bar No. 137,067
trojan@trojanlawoffices.com
Lan C. Dang CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone:   310-777-8399
Facsimile:   310-691-1086
Attorney for Defendant,
California Expanded Metal Products Co.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Seal4Safti, Inc., a Washington corporation,<br><br>　　　　　Plaintiff,<br><br><br>California Expanded Metal Products Co., a California company,<br><br>　　　　　Defendant. | CASE NO. 2:20-cv-10409 −MCS−JEM<br><br>**DEFENDANT CEMCO'S REDACTED TRIAL BRIEF PURSUANT TO L.R. 16-10**<br><br>Trial Date: May 3, 2022<br>Time:  8:30 a.m.<br>Place: Courtroom 7C<br><br>Honorable Mark C. Scarsi |

TROJAN LAW OFFICES
Beverly Hills

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ............................................................................................ 1

II.  TRIAL ISSUES ............................................................................................... 3

  A.   New Assignor Estoppel Evidence for Trial ........................................... 3

    1.   Evidence of Settlement Negotiation Contradicting Klein's Declaration ..... 4

    2.   Klein's Allegations and Admissions in the 2016 Case ................................ 6

  B.   Invalidity Issues ..................................................................................... 7

    1.   S4S's "Prior Art" Do Not Qualify as Prior Art ......................................... 7

    2.   No Anticipation of the Klein Patents .......................................................... 8

    3.   The Klein Patents Are Not Obvious ............................................................ 8

  C.   Infringement ........................................................................................... 9

    1.   The FRG Products ....................................................................................... 9

    2.   Direct Infringement by Defendants ............................................................ 9

      a.   Infringement of the Klein Patents .......................................................... 9

      b.   The Pilz '389 Patent ............................................................................. 11

    3.   Induced Infringement ............................................................................... 14

      a.   Direct Infringement by Customers ....................................................... 14

      b.   Instructions on S4S Website ................................................................ 18

      c.   Instructions for UL Listed Assemblies ................................................ 19

  D.   Willfulness ........................................................................................... 19

  E.   Damages ............................................................................................... 20

    1.   Prior License Agreements ......................................................................... 20

    2.   A Reasonable Royalty Rate in the Present Case ....................................... 21

TROJAN LAW OFFICES
BEVERLY HILLS

-1-

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Minerva Surgical, Inc. v. Hologic, Inc.*,
   141 S. Ct. 2298, 210 L. Ed. 2d 689 (2021)............................................................. 3

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012) ........................................................................... 15

Pursuant to Local Rule 16-10, Plaintiff California Expanded Metal Products Company ("CEMCO") respectfully submits this trial brief for the jury trial beginning on May 3, 2022.  As the Court is familiar with the shorthand references (*e.g.* "Klein Patents," "the Washington Case," "the Original Litigation," etc.) identified on page 1 of CEMCO's Memorandum of Contentions of Fact and Law (Dkt. 133) and other recent pretrial filings, CEMCO will use the same shorthand references here.

## I.    INTRODUCTION

This brief will focus on hinge issues as to validity, infringement and damages that have not been fully addressed in other pretrial filings.  CEMCO will also discuss evidence[1] that have not been previously raised as to these hinge issues.

On validity, there are two hinge issues: assignor estoppel and the priority of the patents.  Assignor estoppel hinges on whether the $800,000 that CEMCO paid to James Klein in settlement of the Original Litigation was for the assignment of the Klein Patents (as CEMCO claims) or whether that money was paid to satisfy royalties owed by a third-party named ClarkDietrich (as S4S and Klein now claim).  The Court will recall that S4S submitted a declaration by Klein on January 3, 2022 in the present case claiming that the money was for royalties owed by ClarkDietrich (Dkt. 91-3).  CEMCO will present evidence at trial to show that Klein's declaration was false.

Specifically, CEMCO will present settlement drafts and emails chronicling the four months of settlement negotiation, which show that the money was for the assignment of the Klein Patents.  CEMCO will also present evidence that Klein subsequently sued ClarkDietrich alleging that ClarkDietrich never paid the owed royalties.  In other words, Klein cannot claim that the $800,000 was for royalties owed by ClarkDietrich when he sued ClarkDietrich claiming he was still owed that money.  And CEMCO will present evidence that Klein was a licensee to the Klein Patents after their assignment to CEMCO.  Klein cannot claim that the patents were

---

[1] Citations are to the trial exhibit numbers in the March 28, 2022 Joint Exhibit List. (Dkt. 118.)

TROJAN LAW OFFICES
BEVERLY HILLS

1    invalid when he was benefiting from the monopoly of the patents in his licensed

2    territory and as he received royalties for the patents.

3        The other hinge issue as to validity is the priority of the Asserted Patents

4    relative to the "prior art" asserted by S4S.  Specifically, S4S's expert's invalidity

5    report is premised on assumptions that the prior art references pre-date the Asserted

6    Patents even though they post-date the priority of the Asserted Patents.  S4S's expert

7    made the assumptions based on instruction of S4S's counsel.  S4S's expert made no

8    effort to independently determine priority.  When the Asserted Patents are attributed

9    their correct priority, S4S's references are disqualified as prior art and, consequently,

10   S4S's invalidity arguments collapse.

11       Even if S4S reaches the merits of its obviousness claims, its arguments are

12   undone by Klein's own 37 CFR 1.132 declaration (and exhibits) touting the

13   "secondary considerations" of his invention.

14       As to infringement, S4S's non-infringement defense had hinged on convincing

15   this Court to adopt a narrow claim construction of "intumescent strip" by interpreting

16   the term "comprising" to mean "consisting essentially of" in order to exclude the

17   foam layer of the FRG strip, which the Court declined to do.  (Dkt. 65).  Instead, the

18   Court interpreted "comprising" to be an open term.  Under this Court's construction,

19   there is no question the Accused Products are infringing because the FRG strip is an

20   intumescent strip applied to the track as claimed in the Klein Patents.  (Dkt. 114-1.)

21   The same analysis applies to the Pilz '389 Patent.

22       Further, S4S's infringement was willful.  The crux of S4S's willfulness is that

23   it is still selling intumescent strip and inducing its customers to infringe the Klein

24   Patents despite being held in contempt in the Washington Case.  S4S's infringement

25   could not be more deliberate and flagrant.  To top it off, S4S presented a false

26   declaration from Klein in this case (Dkt. 91-3) to bolster its invalidity defense.

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

-2-

Lastly, the hinge issue for damages is the rate for a reasonable royalty pursuant to *Georgia-Pacific*. The key evidence at trial will be previous licenses for these patents, including: (i) the 2012 license between BlazeFrame and ClarkDietrich (Trial Ex. 178); (2) the 2015 license between CEMCO and ClarkDietrich (Trial Ex. 179); (3) the 2017 license between CEMCO and ClarkDietrich (Trial Ex. 180); and most particularly, the 2019 settlement agreement between CEMCO/ClarkDietrich and Klein/Safti-Seal (Trial Ex. 447).

## II.  TRIAL ISSUES

### A.  New Assignor Estoppel Evidence for Trial

In denying CEMCO's motion for summary judgment as to S4S's invalidity claim based on assignor estoppel (Dkt. 79), the Court found there were triable issues of fact under *Minerva*[2] as to whether Klein represented that the Klein Patents were valid when he assigned them to CEMCO (Dkt. 109). The Court's finding was based on Klein's recent declaration claiming that the $800,000 paid by CEMCO in the Original Litigation was not for the assignment of his Patents but for past royalties allegedly owed by ClarkDietrich. (Dkt. 91-3 at ¶¶ 10, 11, 16, 20 and 21.) The Klein declaration is a sham.

At trial, CEMCO will show that Klein's declaration is contradicted by:

(1) emails and drafts of the settlement agreement submitted by Klein's own attorneys to Judge Pregerson in the Original Litigation, which provided that "BF will sell/transfer the 'Patents' to CEMCO in exchange for $800,000" (Trial Exs. 344, 352, 364);

(2) Klein's Answer and Counterclaims in the 2016 Case, in which he:

(a) admitted "[t]he $800,000 and royalties being offered to BlazeFrame from CEMCO are for the assignment of the patents listed on the Assignment *and for nothing more*" (Trial Ex. 365 at ¶ 15 (emphasis added)) and "[t]he $800,000 and royalties *were*

---

[2] *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 210 L. Ed. 2d 689 (2021).

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

*always understood* to be consideration for any patent assignment and/or license" (*id.*, at ¶ 48 (emphasis added)); and,

(b) alleged that "Clark[Dietrich] also breached the October Settlement Agreement by, for example, failing to pay the escrow monies to BlazeFrame and/or Klein" (*id.*, at ¶ 11); and,

(3) Klein's own declaration in the 2016 Case, in which he stated under oath that he was still owed royalties from ClarkDietrich (Trial Ex. 366 at ¶ 20);

(4) Klein's Answer in the 2018 Washington Case, admitting "CEMCO paid BlazeFrame for the assignment of the Patents" (Trial Ex. 367 at ¶ 7), which is signed by S4S's current counsel.

CEMCO will now explain each of these points in fuller detail.

**1.    Evidence of Settlement Negotiation Contradicting Klein's Declaration**

Klein and BlazeFrame filed a motion in the Original Litigation to enforce the settlement. In support of the motion, they submitted dozens of emails and settlement drafts that memorialized the settlement negotiations. (Trial Ex. 177-178 and 338-365.) In particular, Mr. Paul Beattie (BlazeFrame's counsel)[3] submitted no less than 11 drafts of the proposed settlement, *all* showing that the $800,000 was for the assignment of Klein's patents to CEMCO. (Trial Ex. 347-351, 353-356, 362, 363.)

For example, Trial Ex. 344 is described as "an email from Ms. Renée Rothauge [Mr. Klein's attorney in that case] to Mr. Trojan dated October 1, 2015 at 3:12 p.m., confirming the terms of the Klein, BlazeFrame and CEMCO agreement in a term sheet." (Trial Ex. 177 at ¶ 14.) The term sheet included in relevant part that **"BF will sell/transfer the 'Patents' to CEMCO *in exchange* for $800,000"**:

---

[3] BlazeFrame was represented by Paul Beattie. Mr. Klein was represented by Renée Rothauge. ClarkDietrich was represented by Ann Schoen. And CEMCO was represented by Joe Trojan.

| Transfer/sale of Patents from BF to CEMCO | BF will sell/transfer the "Patents" to CEMCO in exchange for $800,000 |
|---|---|
| License from CEMCO to BF | Royalty free for life of Patents |
| License from CEMCO to CD | CEMCO will license the "Patents" to Clark to make, sell, or use the "Products." 27.5% of any such royalties from such license to be paid to BF/Klein for a period of 5 years |
| "Patents" transferred to CEMCO | The following patents and patent applications:<br><br>Patent No. 7,681,365<br>Patent No. 7,814,718<br>Patent No. 7,866,108<br>Patent No. 8,056,293 |

(*Id*. (emphasis added).)

Similarly, Trial Ex. 350 is a November 4, 2015 email from Mr. Beattie to Mr. Trojan, in which Mr. Beattie forwarded Klein/BlazeFrame's redlined draft of the settlement agreement:

> 2.  Assignment of the BlazeFrame Patents:
>
>     a.  Klein and/or BlazeFrame will assign all rights in the "BlazeFrame Patents" to CEMCO in exchange for $800,000 and the licensing fees described herein.  The BlazeFrame Patents shall be assigned to CEMCO and recorded in the United States Patent and Trademark Office within ten (10) days of the Effective Date of all Parties signing this Agreement.  CEMCO shall pay $800,000 to BlazeFrame within ten (10) days of the final recordation of assignments of the BlazeFrame Patents.

(Trial Ex. 350.)

And "[Trial Ex. 364] is a clean copy of the settlement agreement that Klein and BlazeFrame *respectfully request the Court to adopt and enforce as accurately memorializing the terms of the parties' settlement agreement*."  (Trial Ex. 177 at ¶ 43 (italicization added).)  The settlement draft at Trial Ex. 364 provides:

> 2.  Assignment of the BlazeFrame Patents:
>
>     a.    Klein and/or BlazeFrame will assign rights in the BlazeFrame Patents to CEMCO in exchange for $800,000 and the licensing fees described herein.  The BlazeFrame Patents shall be assigned to CEMCO and recorded in the United States Patent and Trademark Office within ten (10) days of the Effective Date.  CEMCO shall pay $800,000 to BlazeFrame within ten (10) days of the final recordation of assignments of the BlazeFrame Patents.

(Trial Ex. 364.)

In short, over the course of the months-long settlement negotiation from roughly October 2015 to February 2016, all communications and drafts of the

-5-

settlement confirm that the $800,000 was for the assignment of the "BlazeFrame Patents" (now referred to as the "Klein Patents" in this litigation).  Put differently, none of the communications and drafts support S4S's argument that the $800,000 was payment for royalties allegedly owed by ClarkDietrich to Klein.

### 2.    Klein's Allegations and Admissions in the 2016 Case

In the 2016 Case, CEMCO and ClarkDietrich sued Klein and BlazeFrame for breach of the Original Litigation settlement.  (Trial Ex. 365.)  Klein answered and counterclaimed, alleging:

> 9.    …the following patents were assigned to CEMCO as part of the resolution of the prior litigation…Patent Nos. '365, '718, '108, '293, '314, and '526….**This is reflected in numerous places, including a written term sheet sent by Renee Rothauge to Joseph Trojan on October 1, 2015, as well as emails between attorneys Beattie and Trojan. This understanding was also reflected in the Settlement Conference Transcript of October 2, 2015…**

> 11. Plaintiff and Counterclaim Defendant Clark also breached the October Settlement Agreement by, for example, **failing to pay the escrow monies to BlazeFrame and/or Klein** that should have been released upon conclusion of the lawsuit, particularly in light of the fact that Clark's counsel explicitly agreed to a waiver and release of all claims, including Clark's claim for indemnification against BlazeFrame and Klein, during the October settlement conference…

> 15. …**The $800,000 and royalties** being offered to BlazeFrame from CEMCO are for the **assignment of the patents** listed on the Assignment **and for nothing more**.

> 19. …First, the **$800,000 and royalties** paid by CEMCO was consideration for the **assignment of certain patent rights**.

> 22. **Defendants [Klein and BlazeFrame] admit** that CEMCO paid the $800,000 for the **assignment of certain well-defined patent rights to CEMCO.**

TROJAN LAW OFFICES
BEVERLY HILLS

23. Clark[Dietrich] … **has not yet** returned the escrow monies it agreed to return, that it had been wrongfully withholding from royalty payments due to BlazeFrame under the License and Commercialization Agreement. **To be clear, it has never returned those promised monies.**

35. **Defendants [Klein and BlazeFrame] admit** that CEMCO paid the $800,000. Defendants also note that BlazeFrame **assigned the relevant intumscent-header** [sic] **track patents to CEMCO as explicitly agreed**.

48.   …The $800,000 and royalties **were always understood to be consideration for any patent assignment** and/or license.

(Trial Ex. 365 (emphasis added).)

Later in the case, Klein himself submitted a declaration dated June 1, 2017 in support of his motion for partial summary judgment, in which he stated:

20. The total amount of unpaid BlazeFrame royalties collected by ClarkDietrich for the period of December 20, 2012 to April 4, 2016 is … about $1,033,305.23. In other words, **$1,033,305.23 represents the total dollar amount ClarkDietrich improperly hornswoggled from BlazeFrame**.

(Trial Ex. 366 at ¶ 20 (emphasis added).)  Klein made these statements under oath. (*Id*.)

In short, the January 3, 2022 Klein declaration (Dkt. 91-3) that S4S submitted to this Court was false.

**B.    Invalidity Issues**

**1.    S4S's "Prior Art" Do Not Qualify as Prior Art**

The Pilz '389 Patent claims a priority date of September 21, 2009 based on U.S. Provisional Application No. 61/244,277 ("'277 Application"), but S4S argues that it is only entitled to a priority date of April 2, 2018 when the application was filed.  Many of S4S's so-called "prior art" references come after September 21, 2009.

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

S4S's own expert does not explain why the '389 Patent is not entitled to the September 21, 2009 priority date as specified on the face of the patent.

Even if the '389 Patent is not given the benefit of the September 21, 2009 priority date, it can still claim priority to any one of the six intervening patents. Accordingly, the "prior art" references asserted against the Pilz '389 Patent are not prior art at all.

### 2.    No Anticipation of the Klein Patents

S4S does not allege anticipation as to the Klein Patents.

### 3.    The Klein Patents Are Not Obvious

Before the development of the patented products at issue, fire stopping products used at the top and bottom of walls were predominantly intumescent caulk and mineral wool.  (See e.g., Dkt. 92-2: Pilz Rpt. at 3.)  These materials were applied after the metal wall framing was installed and before the dry wall was applied. Because they were applied separately, different tradesmen with different skills were hired just for the fireproofing task.

The Asserted Patents provide the ability to install fire-proofing without a separate, additional step of applying caulk and/or mineral wool.  The patented products are shipped to the construction site with the intumescent material already factory-applied to the tracks.  The tracks (with the pre-applied intumescent material) are then installed in a single step. Applying the intumescent to the track in the factory ensures that the intumescent is securely adhered to a clean steel surface under environmental conditions that ensure better adhesion and that the proper amount of intumescent is provided to a given area of track.

Klein himself touted the "secondary considerations" of nonobviousness for his invention in a 37 C.F.R. 1.132 declaration, which averred that the invention solved long-felt need, its commercial success, and how it was copied by others.  (Trial Ex. 368 at ¶ 11.)

C.   **Infringement**

1.   **The FRG Products**

As identified in CEM's Memorandum of Facts and Law, there are 12 FRG Products at issue, including for example:

| Safti-Seal Product Profile Name | Representative Picture of Profile |
|---|---|
| PS7 – SaftiFrame (Slotted Both Sides) with two slotted legs | |
| PS1 – SaftiFrame "DL" (Deep Leg) Profiles with two solid legs | |
| PS10 – SaftiFrame "ODL" (Offset Deep Leg) Profiles with two offset solid legs | |
| PS27 – SaftiFrame "JR" profiles with one short (front) and one long (back) leg | |
| PS61 – "DJR" Double J-Runner (Shaft Wall) Profile | |

2.   **Direct Infringement by Defendants**
a.   **Infringement of the Klein Patents**

The FRG products infringe at least claim 12 of the '718 Patent (Trial Ex. 101), and claims 1 and 6 of the '314 Patent (Trial Ex. 102).  Below is an exemplary claim

TROJAN LAW OFFICES
BEVERLY HILLS

chart showing how claim 12 of the '718 patent reads on the DSL product (Trial Ex. 208):

| US Patent No. 7,814,718 | |
|---|---|
| 12. An elongated U-shaped sheet-metal track, comprising: | The DSL slotted leg profile is an elongated U-shaped sheet metal track |
| an elongated web integrally connected to a pair of spaced apart and outwardly extending sidewalls with the web and sidewalls defining a U-shaped profile, each sidewall having inner and outer sidewall surfaces, each sidewall having a plurality of slots positioned perpendicular to the lengthwise direction of the elongated web, each sidewall having a first sidewall portion adjacent to the web and a second sidewall portion adjacent to the first sidewall portion; | The DSL profile has an elongated web connected to a pair of spaced apart and outwardly extending sidewalls defining a U-shaped profile, each sidewall having inner and outer sidewall surfaces. Each sidewall has inner and outer surfaces and each has slots perpendicular to the lengthwise direction of the web, and each sidewall has a first sidewall portion adjacent to the web and each sidewall's first portion is adjacent to its second portion:    |
| and an elongated heat expandable intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the 10ntomescent strip being positioned on the first | The FRG Strip is affixed lengthwise on both sides of the DSL track as specified in the wall assembly of the HW-D-0980 UL listing; it is positioned on the first sidewall portion and not the second sidewall portion: |

-10-

TROJAN LAW OFFICES
BEVERLY HILLS

| sidewall portion and not on the second sidewall portion. |  |
|---|---|

In addition, claim 1 of the '314 patent requires only a track with an intumescent strip where the intumescent material has a specified composition. The intumescent material in the FRG Strip meets that composition. (Trial Exs. 286, 300.) Therefore, the application of the FRG Strip to any generally u-shaped track (including the DL, SL, DSL, RCD, RCS, JR, DJR, OJR, JRS, OJRS, ODSL, ODL, BT, and VT profiles) directly infringes claim 1 of the '314 patent. (Trial Exs. 208-218)).

**b.      The Pilz '389 Patent**

The FRG products infringe at least claim 7 of the '389 Patent (Trial Ex. 104). For example, claim 7 of the '389 patent reads on the DSL product (Trial Ex. 208):

| The '389 Patent | |
|---|---|
| **Claim 7** | **FRG Products – See Exhibit 448 – 449** |
| 7. A fire-block wall component for sealing a linear wall gap from fire, smoke and sound, the fire-block wall component comprising: | The FRG Products are specially configured to create a fire-rated wall assembly for sealing a deflection gap from fire, smoke and sound.  |

-11-

| The '389 Patent | |
|---|---|
| **Claim 7** | **FRG Products – See Exhibit 448 – 449** |

# SAFTI SEAL™

CLASSIFIED c(UL)us

Sound Tested in Accordance with ASTM E90-09

**SAFTI SEAL™**

CLASSIFIED (UL)

Sound Tested in Accordance with ASTM E90-09

**PS6 - "DSL" (Slotted DFL Styles) Profiles with two slotted legs**

Composite Gasket/Framing for use in up to 2-rated wall assemblies. Provides an unencumbered joint protection accommodates up to 1 1/2" overall movement with level III (seismic) certification. Minimum G40 (25ga) and G60 (18ga and heavier) coating two legs with slots spaced 1" O/C for attachment of studs per listed assemblies in UL Fire Resistance Directory.

PEEL & STICK ADHESIVE LAYER

FLEX-LOCK EDGE ROLLOVER LOCK TO SUBSTRATE

TC1 THERMAL LAYER

ABUSE & WEATHER RESISTANT INTUMESCENT FIRE STOP

| Profile | Gasket Width | Install Gap | Deflection |
|---|---|---|---|
| FRG-50 | 0.75" | 1/4" | 1/2" |
| FRG-75 | 1.00" | 3/8" | 3/4" |
| FRG-100 | 1.25" | 1/2" | 1" |
| FRG-150 | 1.50" | 3/4" | 1.50" |
| FRG-200 | 2.25" | 1" | 2.00" |
| FRG-300 | 3.25" | 1.50" | 3.00" |
| FRG-400 | 4.25" | 2.00" | 4.00" |

CLASSIFIED c(UL)us
Sound Tested in Accordance with ASTM E90-09

"Peel & Stick" Gasket "Wrap Around" Seal - Before MEP, Stud & Drywall
Up to 4.00" Deflection - 100% Unencumbered Smallest Install Gaps

➤ Single Composite Profile - Rated for Both **_1 & 2-Hour_** Assemblies

➤ Lifetime **_Fire, Smoke, & Sound Protection_** - **_No Material Fatigue_**

| an elongate strip comprising: | The FRG Products have an elongate strip. |
|---|---|



Rollover & Compress to substrate

Install Gap Deflection

Substrate

Safti-Seal FRG

Partition per Schedule

Safti Seal 3 12 18 1

MORE VIDEOS

SAFTI SEAL

Safti-Frame Deflection Track with Saft-Strip Factory Installed

2:26 / 4:12    YouTube

TROJAN LAW OFFICES
BEVER

SAFTI SEAL™

-12-

*Sound Tested in Accordance with ASTM E90-09*

| The '389 Patent | |
|---|---|
| **Claim 7** | **FRG Products – See Exhibit 448 – 449** |
| a fire-resistant material portion; | The FRG products have a fire-resistant material portion.  |
| | | Profile | Gasket Width | Install Gap | Defle... |
| | |---|---|---|---|
| | | FRG-50 | 0.75" | 1/4" | 1/... |
| | | FRG-75 | 1.00" | 3/8" | 3/... |
| | | FRG-100 | 1.25" | 1/2" | 1... |
| | | FRG-150 | 1.50" | 3/4" | 1.5... |
| | | FRG-200 | 2.25" | 1" | 2.0... |
| | | FRG-300 | 3.25" | 1.50" | 3.0... |
| | | FRG-400 | 4.25" | 2.00" | 4.0... |
| a foam material portion attached to the fire-resistant material portion; and | The FRG products have a foam material portion attached to the fire-resistant material portion.  |
| | | Profile | Gasket Width | Install Gap | D... |
| | |---|---|---|---|
| | | FRG-50 | 0.75" | 1/4" | |
| | | FRG-75 | 1.00" | 3/8" | |
| | | FRG-100 | 1.25" | 1/2" | |
| | | FRG-150 | 1.50" | 3/4" | |
| | | FRG-200 | 2.25" | 1" | |
| | | FRG-300 | 3.25" | 1.50" | |
| | | FRG-400 | 4.25" | 2.00" | |
| an adhesive portion attached to at least one of the fire-resistant material portion and the foam material portion, wherein | [image with] ...ve portion attached to at least ...tion and the foam material |
| | | Profile | Gasket Width | Install Gap | D... |
| | |---|---|---|---|
| | | FRG-50 | 0.75" | 1/4" | |
| | | FRG-75 | 1.00" | 3/8" | |
| | | FRG-100 | 1.25" | 1/2" | |
| | | FRG-150 | 1.50" | 3/4" | |
| | | FRG-200 | 2.25" | 1" | |
| | | FRG-300 | 3.25" | 1.50" | |
| | | FRG-400 | 4.25" | 2.00" | |
| the elongate strip is configured to be positioned | ...have an elongate fire-block ...n the deflection gap between ...nd flanges of the track and ...rack by the adhesive portion |

*Sound Tested in Accordance with ASTM E90-09*

-15-

| Claim 7 | FRG Products – See Exhibit 448 – 449 |
|---------|--------------------------------------|
| in the linear wall gap and attached to a flange of a header track by the adhesive portion such that the elongate fire-block wall component seals the linear wall gap from fire, smoke and sound. | such that the elongate fire-block wall component seals the deflection gap from fire, smoke and sound.<br><br><br><br> |

### 3.    Induced Infringement
#### a.    Direct Infringement by Customers

S4S also induces infringement of the Klein Patents.  As a predicate to induced infringement, S4S's customers directly infringe by building wall assemblies in the configurations that are described in the UL listings provided by S4S's website. (Trial Ex. 297.)  Those ULs instruct customers how to build wall assemblies with the FRG

TROJAN LAW OFFICES
BEVERLY HILLS

products and so their existence proves direct infringement. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1365 (Fed. Cir. 2012).

Below is an exemplary claim chart showing how the '365 Patent reads on a wall assembly built in accordance with UL listing HW-D-0890 (Trial Ex. 203) for a track called a slotted resilient channel (referred to by S4S as RCS) (Trial Ex. 214).

| US Patent 7,681,365 | |
|---|---|
| 1. A fire retardant head-of-wall assembly configured to seal a linear head-of-wall construction joint or gap when exposed to a heat source, comprising: | A wall assembly built in accordance with the UL HW-D-890 listing using the RCS track is a fire retardant head-of wall assembly that is configured to seal a linear head-of-wall construction joint or gap when exposed to a heat source:  |
| an elongated sheet-metal footer track; | Item 2A of the HW-D-890 UL listing requires "steel floor runners", i.e., a footer track |
| an elongated sheet-metal header track confronting and vertically spaced apart from the footer track, the header track including a web integrally connected to a pair of spaced apart and downwardly extending sidewalls, the web having a top exterior web surface | Item 2.A2 of the HW-D-890 UL listing requires "resilient ceiling runners", i.e., an elongated sheet-metal header track such as the RCS. The RCS header track and the footer track are vertically spaced apart from each other by the desired height of the wall, and they confront each other, i.e., the header track "U" opens downward and the footer track "U" opens upward. The web has a top exterior surface positioned immediately adjacent the ceiling and a bottom interior web surface. The sidewalls are substantially coplanar and they have inner and outer sidewall surfaces, with upper and lower portions, all as shown in the figures above and below: |

TROJAN LAW OFFICES
BEVERLY HILLS

-15-

| | |
|---|---|
| positioned immediately adjacent to a ceiling and a bottom interior web surface, each sidewall being substantially coplanar and having inner and outer sidewall surfaces, each sidewall having an upper sidewall portion adjacent to the web and a lower sidewall portion; |  |
| an elongated intumescent strip affixed lengthwise on at least one of the outer sidewall surfaces of the pair of sidewalls, the intumescent strip being positioned on the upper sidewall portion, the intumescent strip having an outer strip surface offset from the outer sidewall surface an intumescent strip offset distance; | The elongated FRG intumescent strip is affixed lengthwise on both outer sidewall surfaces of the pair of sidewalls on the RCS track. It is positioned on the upper sidewall portion. The outer surface of the FRG intumescent strip is offset from the outer sidewall surface the intumescent strip offset distance. The FRG intumescent strip has an outer strip surface offset from the outer sidewall surface an intumescent strip offset distance.  |
| a plurality of sheet-metal studs having upper and lower end portions, the studs being vertically positioned between the spaced apart and confronting footer and header tracks | A plurality of sheet-metal studs having and upper and lower end portions are vertically positioned between the spaced apart and confronting footer and header tracks so that the lower end portions are received into the footer track and the upper portions are received into the header track. The upper end portions of the studs are spaced apart from the bottom interior web surface of the header track a first gap distance that allows for ceiling deflections. |

TROJAN LAW OFFICES
BEVERLY HILLS

| such that the lower end portions are received into the footer track and the upper end portions are received into the header track, each of the upper end portions of the plurality of studs being spaced apart from the bottom interior web surface of the header track a first gap distance that allows for ceiling deflections; |  |
| and wallboard attached to at least one side of the plurality of studs, the wallboard having a top linear end surface positioned apart from the ceiling a second gap distance that allows for ceiling deflections and defines the linear head-of-wall construction joint or gap, the wallboard having an elongated upper interior wallboard surface in linear contact with and bearing against the outer strip surface of the elongated intumescent strip. | Wallboard is attached to at least one side of the plurality of studs. The top linear end surface of the wallboard is positioned apart from the ceiling a second gap distance that allows for ceiling deflections and defines the head-of-wall construction joint or gap. The wallboard has an elongated upper interior wallboard surface in linear contact with and bearing against the outer strip of the FRG Strip. Item 3A of the HW-D-0890 UL listing says "Gypsum board to overlap a min of 5/8 in. (16mm) or 1/4 in. (6mm) over the gasket respectively."<br><br> |

TROJAN LAW OFFICES
BEVERLY HILLS

1

### b.  Instructions on S4S Website

2

3

S4S induced infringement by providing instructions to its customers to build

4

infringing assemblies using the FRG products.  S4S knows how the FRG products

5

are being used. Klein referred to HW-D-0890 as "our most common UL listing" in a

6

July 23, 2020 email to a customer (Jon Jory Corp.) (Trial Ex. 303.) Customers tell

7

S4S what track they are using in fire-stopping applications, seeking instructions on

8

what size FRG Strip to apply in head-of-wall and bottom-of-wall applications. (Trial

9

Ex. 304.)

10

Mr. Sydry admitted that S4S's website instructs customers to apply the FRG

11

Strip to metal tracks:

12

Q.      ….On your website you instruct customers to put the FRG tape
         on a track. You know that, right?

13

A.      Yeah.

14

(Dkt. 103-14: Sydry 118:17-21.) Specifically, the website has a video that provides

15

that instruction:

16

17

Q.      So this video with instructions is on your website for how to
         install FRG tape on a header in a fire-rated condition on the
         ceiling, correct?

18

A.      Yes, sir. []

19

Q.      So you do instruct your customers to install FRG tape on a U-
         shaped track in a head-of-wall condition, correct?

20

A.      It gives an option, yes.

21

22

(Dkt. 103-14: Sydry 128:24 – 129:7 (objection omitted).) These are the same videos

23

and instructions used by Safti-Seal to instruct customers how to apply the infringing

24

and enjoined Safti-Strip. (Dkt. 103-16:  Tullis 48:3-49:16; Trial Ex. 250.)

25

On behalf of S4S, Klein also instructs customers to apply FRG Strip on track

26

in head-of-wall applications. (Dkt. 103-13: Klein Dep., 232:1-234:13, Trial Ex. 298.)

27

Klein  and  S4S  regularly  provide  engineering  judgments  where  they  instruct

28

-18-

TROJAN LAW OFFICES
BEVERLY HILLS

customers to install FRG Strip on the upper sidewall portions of u-shaped tracks as part of firestopping wall assemblies. (Trial Ex. 334; Trial Ex. 336; and Trial Ex. 305.)

### c.        Instructions for UL Listed Assemblies

S4S also provides specifications for wall assemblies by promulgating UL Listed Assemblies throughout the market. Klein, on behalf of S4S, obtained numerous UL listings that require the FRG Strip to be affixed on the sidewall of the track. (Trial Ex. 204.)  Each UL listing requires the intumescent "strip" or "gasket" to be affixed on the upper portion of the track.

By providing instructions through their website, in their training of customers, and via engineering judgements and the UL Listed Assemblies, S4S knowingly induced infringement of the Asserted Patents because when customers assemble the FRG products in the field as instructed they infringe the Asserted Patents.

### D.        Willfulness

S4S's infringement is willful.   S4S made and sold the FRG Products despite a high likelihood that doing so would constitute infringement of the Klein Patents because the FRG Products are the same as the infringing SSR Products that were enjoined.  The FRG Products use the same metal track as the SSR tracks.  S4S has UL approvals for the same products that Safti-Seal had for the SSR products.  (Trial Ex. 332.)  Thus, S4S sold and continues to sell FRG Strip for use with the same track profiles as Safti-Seal.

S4S actually knew that its actions constituted an unjustifiably high risk of infringement of the Klein Patents because: (a) it was intimately familiar with Judge Robart's claim construction of "intumescent strip" in the Washington Case; yet (b), S4S did not make a good-faith effort to avoid infringement by modifying the intumescent strip as construed by Judge Robart;[4] (c) when this Court construed

TROJAN LAW OFFICES
BEVERLY HILLS

---

[4] S4S merely changed the thickness of the foam, which had nothing to do with the Klein Patents.

-19-

1  "intumescent strip" essentially like Judge Robart, S4S still continued to sell the
2  products.  Thus, S4S did not have a good faith belief that it did not infringe the Klein
3  Patents.

4      Lastly, S4S did not have a good faith belief that the Klein Patents were invalid
5  or unenforceable.  S4S relied on Klein's false declaration to survive summary
6  judgment as discussed above.

7      **E.    Damages**

8      CEMCO seeks a royalty rate of 20% pursuant to the *Georgia-Pacific* factors.
9  S4S's sales from April 2020 to April 2022 totaled ██████████. (Trial Exhibits 414,
10  415, 416, 459, 460.)  Therefore, reasonable royalty damages would be $842,237.80.

11      The 20% royalty rate is neither speculative nor hypothetical, as the Klein
12  Patents have been the subject of several prior licenses.  Most recently, the parties to
13  the Washington Case negotiated a ██████████████████████████ as part of
14  the December 2019 settlement, which is an appropriate rate because (i) it was for the
15  SSR products, which are the same as the FRG products; (ii) it was for the same Klein
16  Patents; (iii) it was between essentially the same parties (as S4S is in privity with
17  Klein); and (iv) it was negotiated as a settlement of the Washington Case, which most
18  closely reflects the posture of the parties in the present case.  In addition to the
19  December 2019 settlement license, the Klein Patents have also been the subject of
20  other prior licenses.

21      **1.    Prior License Agreements**

22      BlazeFrame licensed Klein's patents to ClarkDietrich in 2012.  (Trial Ex. 178.)
23  Under that license, "[t]he applicable Royalty Rate for the sale of a particular Licensed
24  Product that contains intumescent shall be equal to: ██████████████

25  ██████████████████████████████████

26  ██████████  (*Id*. at p. 10, ¶ D.)  In the Original Litigation, Klein/BlazeFrame sought

27
28

TROJAN LAW OFFICES
BEVERLY HILLS

████████████████████████████████████████████████ (Trial Ex. 344.)

In the 2016 Case, CEMCO and ClarkDietrich sued Klein and BlazeFrame for breaching the 2015 agreement, and another settlement agreement was reached among the four parties to that suit. (Trial Ex. 180.) ClarkDietrich was granted the exclusive license under the Asserted Patents. The royalty rate was ████ because it was negotiated as part of an overall settlement of an unrelated lawsuit between ClarkDietrich and CEMCO. (Trial Ex. 406 at p. 42/45.)

Most recently, in December 2019 in the Washington Case, CEMCO/ ClarkDietrich negotiated a settlement with Klein/Safti-Seal, provided:



(Trial Ex. 447 (emphasis added).)

### 2.    A Reasonable Royalty Rate in the Present Case

A 20% royalty rate is an appropriate rate based on the *Georgia-Pacific* factors. <u>First</u>, the royalty rate in the December 2019 settlement of the Washington Case fits the context of the present case: essentially the same patents, same products, and same parties. In the Washington Case, CEMCO/ClarkDietrich negotiated the 20% royalty rate because they had little motivation to license to Klein/Safti-Seal. Now CEMCO has even less motivation to license to S4S as evidenced by CEMCO's defense of this declaratory action. Therefore, any negotiated rate under *Georgia-Pacific* would be higher than even the 20% rate in the Washington Case.

<u>Second</u>, the Asserted Patents offer significant benefits over traditional firestop systems, including saving money, time, and complexity in the firestop installation

TROJAN LAW OFFICES
BEVERLY HILLS

process.   This is explained extensively by none other than Klein himself in his 37 C.F.R. 1.132 declaration that he submitted to the Patent Office (Trial Ex. 368), as well as subsequent declarations he submitted in the prior litigations, which tout the significant benefits of putting the intumescent strip on the sidewall of the track as claimed in the Klein Patents.  Mr. Pilz will testify as to the benefits of the Pilz '389 Patent.

Third, S4S has a strong desire to sell products practicing the Klein Patents, as demonstrated by the fact that it hired Klein (already found to be infringing) to help it make and sell the FRG products, which are also already found to be infringing in Washington.  (Trial Exs. 206-220, 278, and 302.)

Fourth, CEMCO knows that S4S wants to sell intumescent tape apart from steel headers, which would cause ClarkDietrich to lose BlazeFrame sales and would result in downward pricing pressure on the BlazeFrame products, thus hurting the royalties CEMCO receives from ClarkDietrich. To protect the value of its license to ClarkDietrich that covers the BlazeFrame products, CEMCO would seek a royalty from S4S that would not allow S4S to provide a competing product at a price that would cause ClarkDietrich to suffer price erosion going forward.  CEMCO estimates that a royalty of at least 20% of FRG-Strip sales would be necessary to equalize retail pricing between the products of ClarkDietrich and S4S.  (Trial. Ex. 406.)

Fifth, CEMCO would be wary of the quality of S4S Strips because they are applied on the job site, regardless of the conditions of the steel (such as wet or dirty steel) or weather conditions and is at times applied on scaffolds, making measurement and application much more difficult.  (Trial Exs. 206, 299, and 433.)

Sixth, S4S would attempt to take customers and sales from ClarkDietrich as it hired Klein and Mike Tullis to sell to customers that had previously purchased (or are familiar with) BlazeFrame products, which are now sold by ClarkDietrich.  (Trial Exs. 278, 295, 296, 302, and 328.)

TROJAN LAW OFFICES
BEVERLY HILLS

Seventh, CEMCO would suffer irreparable harm to the scope of its patents by allowing S4S to sell FRG-tape.   For example, ClarkDietrich would lose the exclusivity it negotiated as part of the 2017 Agreement, a loss which would cause irreparable harm in the form of price erosion and loss of market share and ClarkDeitrich may also seek to adjust the terms of its license with CEMCO.  (Trial Ex. 406.)

Eighth, S4S has positioned infringing FRG products as direct replacements for ClarkDietrich's BlazeFrame products.  (Trial Exs. 184-193, 278, 294-296, 302, 304, 329.)

Ninth, the previous agreements providing licenses to the Klein Patents were not negotiated under economically comparable circumstances to those present at the hypothetical negotiation as they involved settlement of various litigations. (Trial Exs. 405, 406.)

In total, these factors support a royalty rate of 20% for S4S's sales of the infringing products.   Damages should be enhanced due to S4S's willfulness as discussed above.

Respectfully submitted,

TROJAN LAW OFFICES
by

April 26, 2022                      /s/ R. Joseph Trojan_____
                                    R. Joseph Trojan
                                    Attorney for Defendant,
                                    CALIFORNIA EXPANDED METAL
                                    PRODUCTS COMPANY