R. Joseph Trojan CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang CA Bar No. 223,455
dang@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:    310-777-8348

Attorney for Defendant,
California Expanded Metal Products Co.

TROJAN LAW OFFICES
BEVERLY HILLS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Seal4Safti, Inc., a Washington corporation,<br><br>        Plaintiff,<br><br>California Expanded Metal Products Co., a California company,<br><br>        Defendant. | CASE NO. 2:20-cv-10409−MCS−JEM<br><br>**DEFENDANT CEMCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES PURSUANT TO THE COURT'S OCTOBER 3, 2022 ORDER**<br><br>Date: November 21, 2022<br>Time: 9:00 a.m.<br>Place: Courtroom 7C<br><br>**Honorable Mark C. Scarsi** |

# TABLE OF CONTENTS

TROJAN LAW OFFICES
BEVERLY HILLS

Page

I.      INTRODUCTION……………………………………………………………1

II.     STATEMENT OF FACTS: OVERVIEW OF BILLINGS…………………..3

III.    ARGUMENT…………………………………………………….....4

        A.      Law on Calculating Attorneys' Fees………………………..…4

                1.      The Objectives of Awarding Attorneys' Fees…………………4
                2.      The Lodestar Method……………………………………..…5

        B.      TLO's Hourly Rates Were Reasonable…………………………..…6

                1.      Mr. Trojan's Billing Rates……………………………..……6
                2.      TLO Associates' Rates………………………………………7
                3.      TLO's Fees Have Been Found to be Reasonable
                        in Other Cases……………………………………………..…8

        C.      TLO's Expended Hours Were Reasonable……………………………9

                1.      The Overall Scope of the Case………………………………9
                2.      S4S Made the Patent Issues Much More
                        Complex Than They Needed to Be……………………………11
                        a.      S4S's Invalidity Claim…………………………………11
                        b.      S4S's Unenforceability Claim………………………..…13
                        c.      S4S's Noninfringement Claim………………………14
                3.      Other Complicating Issues Unique to This Case ……….….. 15
                        a.      S4S's Estoppel Defenses……………………………… 15
                        b.      S4S's Dispute of Assignor Estoppel……………………16
                4.      CEMCO's Complete Victory and The *IVAC Corp. v. Terumo
                        Corp.* Case………………………………………..……..16
                5.      TLO Was Not Overstaffed: The Breakdown of Hours……..…18

        D.      Calculating the Lodestar: Why the Court Should Award Full
                Attorneys' Fees Up Through the Close of This Case Without
                Reduction…………………………………………………………19

1.    The Bases for Awarding Full Fees……………………………19

2.    CEMCO Is Deserving of All Its Fees………………………20

3.    The Fees Should Not be Reduced………………………..…21

E.    The Court Should Award Non-Attorneys' Fees and Costs……..……23

1.    The Court Should Award Disbursement Costs………..……23

2.    The Court Should Award Paralegal/Non-legal Costs ……...…24

F.    Fees for This Motion Should be Included……………………………25

IV.    CONCLUSION……………………………………………………...…25

TROJAN LAW OFFICES
BEVERLY HILLS

# TABLE OF AUTHORITIES

Cases

*Amsted Indus., Inc. v. Buckeye Steel Castings Co.,*
   23 F.3d 374, 379 (Fed. Cir. 1994) ……………………………………………….24

*Astrue v. Ratliff,*
   560 U.S. 586, 130 S. Ct. 2521, 177 L. Ed. 2d 91 (2010) ………………...….4

*Avera v. Sec'y of Health & Human Servs.,*
   515 F.3d 1343, 1349 (Fed. Cir. 2008) …………………………..……......6

*Beckman Instruments, Inc. v. LKB Produkter AB,*
   892 F.2d 1547, 1553-54 (Fed. Cir. 1989) …………………...…………….....20

*Blum v. Stenson,*
   465 U.S. 886, 895 n. 11 (1984) …………………………………..….…….6

*Bywaters v. United States,*
   670 F.3d 1221, 1228 (Fed. Cir. 2012) ………………………………….……5

*Casavelli v. Johanson,*
   No. CV-20-00497-PHX-JAT, 2021 WL 3400608,
   at *8 (D. Ariz. July 20, 2021) ……………………................................19

*Cent. Soya Co. v. Geo. A. Hormel & Co.,*
   723 F.2d 1573, (Fed. Cir. 1983) ………………………………………5, 21, 23

*Chalmers v. City of Los Angeles,*
   796 F.2d 1205, 1210-11 (9th Cir.1986) ...………………………………….6

*City of Burlington v. Dague,*
   505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) ………..…...………5

*City of Riverside v. Rivera,*
   477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) …………….....………3

TROJAN LAW OFFICES
BEVERLY HILLS

*Codex Corp. v. Milgo Elec. Corp.,*

541 F.Supp. 1198 (D. Mass. 1982) …………………………………………5, 21

*Digital Reg of Texas, LLC v. Adobe Sys., Inc.,*

No. C 12-1971 CW, 2015 WL 1968388, at *3 (N.D. Cal. May 1, 2015)

*aff'd*, 644 F. App'x 1010 (Fed. Cir. 2016) …………………………….........25

*GT Dev. Corp. v. Temco Metal Prod. Co.,*

No. C04-0451Z, 2005 WL 2138546,

at *3 (W.D. Wash. Aug. 31, 2005) …………………….......................24

*Hall v. City of Fairfield,*

No. 10–cv–0508–DAD, 2014 WL 1303612

(E.D. Cal., Mar.31, 2014) ………………………………………………….25

*Hensley v. Eckerhart,*

461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) …………………......1, 9

*Homeland Housewares, LLC v. Sorensen Rsch.,*

581 F. App'x 877, 881 (Fed. Cir. 2014) ……..…………………………21, 22

*ICU Med., Inc. v. Alaris Med. Sys., Inc.,*

No. SACV 0400689MRP VBKX, 2007 WL 6137002,

at *1 (C.D. Cal. June 28, 2007) ……………………...…………………5, 6

*IVAC Corp. v. Terumo Corp.,*

No. CIV. A. 870413 B(M), 1990 WL 180202,

at *1 (S.D. Cal. Aug. 9, 1990) …………………………..…………16, 17, 18

*Jefferson v. Chase Home Fin.,*

No. 06–6510, 2009 WL 2051424,

at *4 (N.D.Cal. July 10, 2009) …………………………………………….19

*Jones v. County of Sacramento,*

No. 09–cv–1025–DAD, 2011 WL 3584332,

at *21 (E.D. Cal. Aug.12, 2011) ……………………………………….......25

TROJAN LAW OFFICES
BEVERLY HILLS

-iv-

*Kerr v. Screen Extras Guild, Inc.,*

526 F.2d 67, 70 (9th Cir. 1975)

*aff'd as modified*, 745 F. App'x 153 (Fed. Cir. 2018) ……..……………..….6, 9

*Khan v. Hemosphere Inc.,*

No. 18 C 5368, 2019 WL 10947306, at *2 (N.D. Ill. July 15, 2019)

*aff'd,* 825 F. App'x 762 (Fed. Cir. 2020)

*aff'd*, No. 21-15051, 2022 WL 4115495 (9th Cir. Sept. 9, 2022) …………11

*Kilopass Tech., Inc. v. Sidense Corp.,*

82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015) ……………………………….21

*Lam, Inc. v. Johns-Manville Corp.,*

718 F.2d 1056, 1069 (Fed. Cir. 1983) ……………………………..……….23

*Large Audience Display Sys., LLC v. Tennman Prods.*, LLC,

745 F. App'x 153, 157 (Fed. Cir. 2018) ……..……...……..……….6, 7, 20

*Lumen View Tech. LLC v. Findthebest.com, Inc.,*

811 F.3d 479, 483 (Fed. Cir. 2016) ………………………………………….5

*MarcTec, LLC v. Johnson & Johnson*,

664 F.3d 907, 921 (Fed. Cir. 2012) …....................................................23, 24

*Mathis v. Spears*,

857 F.2d 749 (Fed. Cir. 1988) …………….…………………………1, 21, 24

*Missouri v. Jenkins,*

491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) ………………...4, 25

*Morales v. City of San Rafael*,

96 F.3d 359, 363-64 (9th Cir.1996) …………………….…...……………..9

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*

478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)

*aff'd*, 558 F.3d 1368 (Fed. Cir. 2009) …………….………………………5

TROJAN LAW OFFICES
BEVERLY HILLS

-v-

*Raylon, LLC v. Complus Data Innovations, Inc.,*

   700 F.3d 1361, (Fed. Cir. 2012) …………………………………………..4

*Therasense, Inc. v. Becton, Dickinson & Co.,*

   745 F.3d 513, 516 (Fed. Cir. 2014) ..…………………………..…………17, 21

*Universal Elecs., Inc. v. Universal Remote Control, Inc.,*

   130 F. Supp. 3d 1331, 1341 (C.D. Cal. 2015)

   *aff'd*, 669 F. App'x 575 (Fed. Cir. 2016) …………………………………...24

<u>Statutes</u>

35 U.S.C. § 285 …………………………………………………......................1, 5, 2

TROJAN LAW OFFICES
BEVERLY HILLS

Pursuant to the Court's October 3, 2022 Order (ECF 286) finding, *inter alia*, this case exceptional under 35 U.S.C. § 285, Defendant California Expanded Metal Company ("CEMCO") respectfully requests the Court to award attorneys' fees and costs as follows.

## I.    INTRODUCTION

The Court concluded that CEMCO is entitled to an award of reasonable attorneys' fees under § 285 because after two years of litigation Plaintiff Seal4Safti ("S4S") presented an essentially frivolous patent invalidity case at trial. (ECF 286 at 10:3-4.) Accordingly, CEMCO requests an award of $1,028,308 in attorneys' fees, as well as $32,694 in disbursements and $4,978 in non-attorney staff billings incurred in defending its patents in this case as of September 20, 2022. (Declaration of R. Joseph Trojan ("Trojan Decl.") at ¶ 2 and Ex. 1a.) CEMCO requests an award for fees and costs incurred after September 20 up to October 21, 2022. (*Id*., Ex. 1b.)

This litigation was entirely of S4S's own making and choosing. It brought this declaratory action seeking to invalidate CEMCO's Patents[1], or failing that, to have the Court declare it did not infringe those Patents. (ECF 1.) Toward those ends, S4S litigated aggressively, alleging a variety of meritless claims, *all of which ultimately failed at trial*. (ECF 213.) Hence, an award of attorneys' fees and costs for the entirety of the case is reasonable. *Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988) (§ 285 is to "make whole a party injured by an egregious abuse of the judicial process").

CEMCO's fees for the whole case are reasonable based on the well-established "lodestar" method of multiplying "the number of hours reasonably expended on the litigation…by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). CEMCO is represented by Trojan Law Offices ("TLO"), a boutique patent firm located in this district since

TROJAN LAW OFFICES
BEVERLY HILLS

---

[1] The four "Klein Patents" and the "Pilz '389 Patent."

1991. The small TLO team for this case consisted mainly of three patent attorneys: lead counsel Joseph Trojan, and two principal associates, Dylan Dang and Francis Wong. (*Id*.) TLO billed an average of **$439/hour** for the case. (Trojan Decl., Ex. 1a at p. 137.) TLO's rates are reasonable because they are consistent with the prevailing market rate for IP attorneys in Los Angeles. According to the American Intellectual Property Law Association's Report of the Economic Survey 2021 ("AIPLA Report")[2], the average billing rate for IP attorneys in the Los Angeles area in 2020 was $441/hour. (Trojan Decl., Ex. 4 at F-27.)

TLO expended a total of **2,358.91** hours over the last two years (as of September 20, 2022). (Trojan Decl., Ex. 1a at p. 137.) TLO's hours were reasonable given the scope and complexity of the patent issues. S4S asserted declaratory claims for invalidity, unenforceability, and non-infringement against five CEMCO Patents. TLO's hours were not only reasonable given the sheer number of claims raised by S4S, but necessary because S4S pushed the case all the way to trial on all of its claims. (ECF 120-1.)

S4S refused to narrow the issues even when it became clear in discovery that some of those issues had little or no merit. Indeed, as discussed below, S4S went out of its way to make the case more complex than it had to be. To take just the most recent example, even *after* the Court noted in its October 3, 2022 Post-Trial Order that "Defendant's status as a prevailing party is a foregone conclusion" (ECF 286 at 9:3-4), S4S informed CEMCO on October 20, 2022 that it would oppose CEMCO's Bill of Costs (ECF 289) on the grounds that "We are going to object to CEMCO as the prevailing party and, therefore, its entitlement to costs." (Trojan Decl., Ex. 10.) This is representative of S4S's concede-nothing, dispute-everything

TROJAN LAW OFFICES
BEVERLY HILLS

[2] "In determining a reasonable rate, a court may refer to [AIPLA] surveys." *Kellogg v. Nike, Inc.*, No. 8:07CV70, 2010 WL 323994, at *3 (D. Neb. Jan. 20, 2010), *aff'd*, 421 F. App'x 971 (Fed. Cir. 2011).

tactic throughout the entire litigation, which significantly increased CEMCO's attorneys' fees and costs.

Despite S4S's exhausting gamesmanship, in the end CEMCO successfully defended the validity of all the Patents and prevailed on its counterclaims for willful infringement. (ECF 213.) The attorneys' fees incurred by CEMCO were well justified considering the successful result. *City of Riverside v. Rivera,* 477 U.S. 561, 562, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("Where a plaintiff has obtained excellent results, [it] should recover a fully compensatory fee…"). Thus, the Court should award the full amount of attorneys' fees totaling $1,028,308. (Trojan Decl., Ex. 1a.)

In addition to the attorneys' fees, CEMCO requests an award of certain costs aside from the costs permitted under Local Rule 54, for which CEMCO has filed an Application to Tax Costs. (ECF 289.) Specifically, CEMCO requests an award of $32,694.21 in disbursements, which include costs for two experts and other administrative costs. (Trojan Decl., Ex. 1a at pp. 135-137.) CEMCO requests $4,978.50 in costs billed by two TLO staff members. (*Id*.) CEMCO also requests fees and costs of $39,300 incurred after September 20 up to October 21, 2022. (*Id*., Ex. 1b.) In sum, the Court should exercise its discretion to award **$1,105,280** in total fees and costs.

## II.    STATEMENT OF FACTS: OVERVIEW OF BILLINGS

TLO's billing records to CEMCO up to September 20, 2022 are attached as Exhibit 1a to the Trojan Declaration. Fees and costs incurred after September 20 are attached as Exhibit 1b. Pursuant to the Court's Standing Order (Section 10.d), a table summarizing the hours worked for each attorney organized by task is attached as Exhibit 2. A table summarizing the hours worked for each attorney organized by attorney is attached as Exhibit 3. As a quick overview, below is a billing summary for each attorney and support staff up to September 20, 2022.

TROJAN LAW OFFICES
BEVERLY HILLS

**Billing Summary:**

| Initials | Billed by | Total Hours | Total Billing | Average Hourly Rate |
|---|---|---|---|---|
| RJT | R. Joseph Trojan | 139.53 | 79,617.50 | 570.61 |
| DCD | Dylan C. Dang | 1,181.60 | 522,200.50 | 441.95 |
| FZW | Francis Z. Wong | 869.60 | 374,111.00 | 430.21 |
| KD | Kevin Davis | 119.83 | 39,624.25 | 330.67 |
| EPT | Edwin P. Tarver | 12.00 | 5,100.00 | 425.00 |
| IAH | Iain A. Hill | 7.25 | 2,676.25 | 369.14 |
| MSS | Michiko S. Speier | 24.60 | 4,551.00 | 185.00 |
| SL | Shirley Li | 4.50 | 427.50 | 95.00 |
| **Total Billing** | | 2,358.91 | $1,028,308.00 | |

(Trojan Decl., Ex. 1a at p. 137.)

## III.   ARGUMENT

### A.   Law on Calculating Attorneys' Fees

#### 1.   The Objectives of Awarding Attorneys' Fees

As the Supreme Court has stated, "[w]e ... take as our starting point the self-evident proposition that the "'reasonable attorney's fee' provided by statute should compensate" for "the work product of an attorney." *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). "The point of an award of attorney's fees, after all, is to enable a prevailing litigant to pay her attorney." *Astrue v. Ratliff*, 560 U.S. 586, 600, 130 S. Ct. 2521, 2530–31, 177 L. Ed. 2d 91 (2010).

Regarding § 285 in particular, Congress' policy objective in allowing attorneys' fees for exceptional cases was two-fold: (1) to provide a deterrent to frivolous or unnecessary patent litigation, and (2) to serve a compensatory purpose for parties injured by such litigation. *Raylon, LLC v. Complus Data Innovations, Inc.,* 700 F.3d 1361, 1372–73 (Fed. Cir. 2012) (internal citations omitted) ("Section 285 was enacted to address a patent-specific policy rationale, awarding fees in exceptional cases in which sanctions were necessary to deter the improper bringing of clearly unwarranted suits. The purpose of the statute has been described by this court as compensation to the prevailing party for its monetary outlays in the

-4-

TROJAN LAW OFFICES
BEVERLY HILLS

prosecution or defense of the suit."). As the Federal Circuit has also noted, **"[t]he compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting *the entire action*."** *Cent. Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed. Cir. 1983) (emphasis added) (*quoting Codex Corp. v. Milgo Elec. Corp.,* 541 F.Supp. 1198, 1201 (D. Mass. 1982)).

### 2.     The Lodestar Method

The Supreme Court teaches that the lodestar is the "guiding light" in determining reasonable attorneys' fees. *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). There is "a 'strong presumption' that the lodestar represents the 'reasonable' fee." *Id*. Ascertaining what constitutes a "reasonable" fee under the lodestar method requires determining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Thus, it is well established that an award of attorneys' fees under § 285 should be based on the loadstar method. *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012); *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SACV 0400689MRP VBKX, 2007 WL 6137002, at *1 (C.D. Cal. June 28, 2007), *aff'd*, 558 F.3d 1368 (Fed. Cir. 2009) ("Courts determine the amount of fees awarded under 35 U.S.C. § 285 using the 'lodestar' analysis.").

Furthermore, the Federal Circuit has noted that "although the amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee, it does not establish an absolute ceiling." *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (internal quotations and citation omitted). "In 'rare' and 'exceptional' cases, *a district court may enhance*

TROJAN LAW OFFICES
BEVERLY HILLS

-5-

*the lodestar amount* based on various factors, provided they are not adequately taken into account by the lodestar calculation." *Id.* (emphasis added).

District courts have "considerable discretion" to determine the amount of fees under § 285. *Large Audience Display Sys., LLC v. Tennman Prods.*, LLC, 745 F. App'x 153, 157 (Fed. Cir. 2018).

## B. TLO's Hourly Rates Were Reasonable

The Ninth Circuit teaches that, "[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210-11 (9th Cir.1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984); *Avera v. Sec'y of Health & Human Servs.,* 515 F.3d 1343, 1349 (Fed. Cir. 2008) ("[T]o determine an award of attorneys' fees, a court in general should use the forum rate in the lodestar calculation.").

Courts consider the "special skill and experience of counsel," the "quality of representation," and "the results obtained" in determining the reasonableness of the hourly rate. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, No. SACV 0400689MRP VBKX, 2007 WL 6137002, at *1 (C.D. Cal. June 28, 2007), *aff'd*, 558 F.3d 1368 (Fed. Cir. 2009) (citing *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975)). TLO's average hourly billing rate in this case is $439/hour (Trojan Decl., Ex. 1a at p. 137), which is consistent with the $441/hour average billing rate for IP work in Los Angeles as reported in the AIPLA Report. (Trojan Decl., Ex. 4 at F-27.) TLO's individual billing rates are as follows.

### 1. Mr. Trojan's Billing Rates

Mr. Trojan is a registered patent attorney with more than 34 years of experience in IP litigation, with particular emphasis in patent cases. (Trojan Decl., at ¶ 6.) He has litigated too many IP cases that have settled to count accurately, but

TROJAN LAW OFFICES
BEVERLY HILLS

-6-

he has completed trials in at least 21 cases involving patents and other intellectual property. (*Id.*)

Mr. Trojan had an hourly billing rate of $500 in November 2020 when this case started. (*Id.* at ¶ 6; Ex. 1a.) His current hourly billing rate is $575. (*Id.*) His trial rate was $600. (*Id.*) His average hourly billing rate in this case was thus $570. (*Id.*)

Mr. Trojan's rate is well below the rates of IP litigators in Los Angeles with similar levels of experience. According to the AIPLA Report, the average hourly billing rate in 2020 for an IP private firm partner with more than 35 years of experience was $648. (Trojan Decl., Ex. 4 at I-37.) The average hourly rate for an IP private firm partner in Los Angeles (regardless of years of experience) was $647. (*Id.* at I-49); *see also, Large Audience Display Sys., LLC v. Tennman Prods.*, LLC, No. CV 11-3398-R, 2017 WL 2432140, at *2 (C.D. Cal. June 2, 2017), *aff'd as modified*, 745 F. App'x 153 (Fed. Cir. 2018) (noting "[t]he 2015 Real Rate Report indicates that the median rate for intellectual property partners [in Los Angeles] was $654.58 per hour"). Thus, Mr. Trojan's rate was eminently reasonable.

### 2. TLO Associates' Rates

The rates for other TLO attorneys who worked on this case were also reasonable. According to the AIPLA Report, the average billing rate for IP work of a firm with 3-5 attorneys in 2020 was $414. (Trojan Decl., Ex. 4 at F-27.)  In Los Angeles, the rate was $441. (*Id.*)

Mr. Dang is a registered patent attorney with 20 years of patent litigation experience. (Trojan Decl., at ¶ 7.) His average hourly billing rate in this case was $442. (*Id.*, Ex. 1a at p. 137.) The average hourly billing rate in 2020 for an (of counsel) IP attorney with 15-24 years of experience at a private firm was $511. (Trojan Decl., Ex. 4 at I-62.)

TROJAN LAW OFFICES
BEVERLY HILLS

-7-

Mr. Wong was an associate of Trojan Law Offices during the course of the case. (Trojan Decl., at ¶ 8.) He was a registered patent attorney with 8 years of litigation experience at the time the case started in November 2020.  (*Id*.) He had an average hourly billing rate of $430 for the case. (*Id*., Ex. 1a at p. 137.) The average hourly billing rate in 2020 for an IP attorney with 7-9 years of experience at a private firm (non-partner track) was $470. (Trojan Decl., Ex. 4 at I-55.)

Four other associates—namely, Kevin Davis, Edwin Tarver, Iain Hill and Emi Shibata (all registered patent attorneys)—assisted with miscellaneous work on the case as needed, billing significantly less hours and at substantially lower rates. (Trojan Decl. at ¶¶ 9-12; Ex. 1a.) Mr. Davis (3 years as a patent attorney) billed 119.83 hours at an average rate of $330/hour. (*Id*. at ¶ 9.) Mr. Tarver (18 years as a patent attorney) billed 12 hours at an average rate of $425/hour. (*Id*. at ¶ 10.) Mr. Hill (1 year as a patent attorney) billed 7.25 hours at an average rate of $369/hour. (*Id*. at ¶ 11.) Ms. Shibata (1 year as a patent attorney) billed 12.5 hours at an average rate of $325/hour. (*Id*. at ¶ 12; Ex. 1b.)

In short, the average hourly billing rates of TLO attorneys were well below the prevailing rates in Los Angeles for IP attorneys with comparable skills doing similar work.

### 3. TLO's Fees Have Been Found to be Reasonable in Other Cases

It is also worth noting that in other cases where TLO has won attorneys' fees for its clients, TLO's fees were found to be reasonable. (Trojan Decl., Exs. 8, 9.) For example, in an international arbitration where TLO represented the prevailing party, the Hon. James Ware (Ret.) granted attorneys' fees, noting that "CB['s] counsel, R. Joseph Trojan and his associates conducted CB's case with efficiency, focus and speed. Their hourly rates were actually lower than those charged by comparable attorneys. The Arbitrator finds no waste or duplicity [in] counsel's

TROJAN LAW OFFICES
BEVERLY HILLS

-8-

work." (Trojan Decl., Ex. 8: April 6, 2016 Final Award at p. 7.) On appeal of that matter, a panel of international judges found that "[a]s for the rates charged by Trojan and Buddle Findlay, the Panel finds that they are more than reasonable. It follows that in the Tribunal's opinion CB should prima facie receive attorneys' fees…." (Trojan Decl., Ex. 9: May 4, 2018 Final Appeal Award at p. 9.)

### C.    TLO's Expended Hours Were Reasonable

In determining the lodestar, courts further consider whether the number of hours expended on the litigation was reasonable. *Hensley v. Eckerhart, supra*, 461 U.S. at 433–34. Although there is no precise rule or formula for making this determination, *id.* at 436, courts generally consider the complexity of the issues and the length of the litigation. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975) (establishing "reasonable" lodestar calculation factors); *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir.1996) (explaining which *Kerr* factors are relevant to, or "subsumed by," the initial lodestar determination).

TLO expended ~2,400 hours on this case as chronicled in its billing records. (Trojan Decl., Ex. 1a at p. 137.) The number of hours expended were reasonable in light of: (1) the overall scope of the case; (2) the complexity of the patent issues; (3) other complicating factors unique to the case; (4) CEMCO's complete victory on all claims; and (5) TLO was not overstaffed for the case.

### 1.    The Overall Scope of the Case

S4S's declaratory claims were directed against five CEMCO patents, each having numerous individual claims. (ECF 1.) S4S alleged the patents were invalid, unenforceable, and not infringed. (*Id.*) CEMCO counterclaimed for infringement. (ECF 47.) The complexity of these issues is reflected in the scope of fact discovery (tens of thousands of documents), expert discovery (four experts), extensive court filings (almost 300 entries in the Case docket), and the volume of evidence presented at the jury trial (497 exhibits in the joint exhibit list (ECF 185)).

TROJAN LAW OFFICES
BEVERLY HILLS

Given the number of issues raised by S4S, the scope of fact discovery was enormous. S4S propounded five sets of requests for production of documents (and four sets of interrogatories and two sets of requests for admissions). (Trojan Decl. at ¶ 13.) In response to the document requests, CEMCO produced more than 23,000 pages of documents. (*Id*.) CEMCO warned S4S early on in the discovery phase that its discovery tactics would drive up the costs of litigation:

> …Plaintiff's demand that CEMCO produce ESI without any concrete constraint is overly broad, disregards any concept of proportionality, and is premature given the status of the case. Plaintiff's document requests are particularly untargeted, comprising a scattershot of demands that fail to be directed to key custodians or data sources. Were CEMCO to collect and produce all of the requested ESI, Plaintiff would be drowning in data. As it is, Plaintiff's insistence that CEMCO produce documents to the broad requests discussed below could generate **10GB of data, which would result in unnecessarily high discovery costs.**

(Trojan Decl., Ex. 5: 5/7/21 letter at p. 3/8.)

S4S, for its part, produced more than 54,000 pages of documents, which CEMCO was required to process and review. (Trojan Decl. at ¶ 15.) However, CEMCO was able to keep the expenses for fact discovery low because the discovery here overlapped with the discovery in the Washington Case. (*Id*.) Since CEMCO had already conducted much of the discovery in the Washington Case, CEMCO did not duplicate discovery to the extent it could be avoided. (*Id*.) For example, for CEMCO's summary judgment motion on invalidity, CEMCO relied on the depositions of James A. Klein, Jaroslaw Sydry, Leszek Orszulak and numerous other documents from the Washington Case (as itemized in Mr. Trojan's December 20, 2021 declaration). (ECF 79-2.) This economy is reflected in the lower hours billed for discovery in this case. (Trojan Decl., Ex. 1a.)

-10-

TROJAN LAW OFFICES
BEVERLY HILLS

### 2. S4S Made the Patent Issues Much More Complex Than They Needed to Be

As one Northern District of Illinois court succinctly observed in awarding fees, "[p]atent infringement cases are inherently complex." *Khan v. Hemosphere Inc.*, No. 18 C 5368, 2019 WL 10947306, at \*2 (N.D. Ill. July 15, 2019), *aff'd,* 825 F. App'x 762 (Fed. Cir. 2020) ("grant[ing] the fee petition in its entirety in favor of Defendants"). While the patented firestopping technology at issue here is not particularly difficult to understand, the myriad of factual allegations underlying the validity, unenforceability, and infringement issues raised by S4S were nonetheless complicated. Moreover, S4S prolonged the case by advancing dubious arguments and evidence on these issues.

### a. S4S's Invalidity Claim

S4S dragged out the case by misusing an "expert" to overcome summary judgment. S4S disclosed Randy Clark as its invalidity expert. (ECF 76-1.) He presented a report on anticipation and obviousness, which presented a complex matrix of prior art combinations. (*Id*.) CEMCO had to prepare an extensive rebuttal report by Don Pilz. (ECF 92-2.) CEMCO incurred the expenses of taking Mr. Clark's deposition and defending Mr. Pilz's deposition. (Trojan Decl. Ex. 1a at p. 64 (RJT 12/10/21 entry) and p. 74 (RJT 1/18/22 entry).) Based on Mr. Clark's report, S4S moved for summary judgment on invalidity of the Patents. (ECF 74-1.) In denying the motion, the Court relied on Mr. Clark's report, noting "a review of the competing expert declarations submitted by the parties demonstrates that summary judgment on invalidity for obviousness and anticipation as to the '365 Patent is unwarranted..." (ECF 109 at 21:17-19.)

However, S4S did not present Mr. Clark as its invalidity expert at trial. (ECF 232 at 9:16-25: "So he won't be offering any opinions in this case about infringement, about invalidity.") **CEMCO would not have incurred fees for**

-11-

TROJAN LAW OFFICES
BEVERLY HILLS

**opposing S4S's summary judgment motion and all the subsequent work of defending the Patents' validity up through trial and beyond but for S4S's deceptive designation of Mr. Clark as its invalidity expert.** As the Court has noted, "Plaintiff presented no evidence about prior art that anticipated or rendered obvious the '389 Patent, presented no evidence about anticipation of the Klein Patents" at trial. (ECF 286 at 9:14-17.) Given the Courts finding that S4S presented "a nearly frivolous invalidity case at trial" (*id.* at 10:4-5), CEMCO would have prevailed on summary judgment against S4S's invalidity claim but for S4S's misrepresentation of Mr. Clark as an expert. S4S's invalidity claim could have and should have been resolved in January 2022.

To make matters worse, despite having presented almost no competent evidence of invalidity at trial, S4S had the temerity to ask for a new trial. In its motion for a new trial based on the Court's bifurcation, S4S argued the Klein Patents would have been found invalid if only S4S had been allowed to tell the jury CEMCO had contested the validity of those patents in the original 2012 case. (ECF 272.) The Court rejected this argument, finding "[t]he fact that Defendant previously took these positions does not obviate Plaintiff's need to prove its positions at trial with competent evidence." (ECF 286 at 10:4-5.)

As to the Pilz '389 Patent, S4S instructed Mr. Clark to assume that the Pilz '389 Patent had a much later priority date that was contrary to the information on the face of the patent. S4S used Mr. Clark to assert that the Pilz '389 Patent was invalid over prior art references, which did not qualify as prior art. (ECF 76-1 at pp. 16-20.) S4S abandoned its invalidity claims against the Pilz '389 Patent. (Day 3 AM Trial Tr. at 64:17-22.) Yet, in a separate motion for a new trial, S4S made the convoluted argument that the Pilz '389 Patent was anticipated by the Klein Patents. (ECF 274.) The Court rejected this argument too, noting "[t]his argument is fundamentally incorrect." (ECF 286 at 7:19.)

TROJAN LAW OFFICES
BEVERLY HILLS

-12-

TROJAN LAW OFFICES
BEVERLY HILLS

**Again, these kinds of unrelenting meritless arguments are representative of S4S's concede-nothing approach to litigation, which drove up the fees of the case for CEMCO.**

### b.    S4S's Unenforceability Claim

S4S's unenforceability claim was even more specious than its invalidity claim and made the case even more complex. As S4S stated in an interrogatory response, "S4S believe[d] that Defendant may have been guilty of inequitable conduct by asserting to the [Patent Office] one definition of 'intumescent strip' under the '389 Patent while simultaneously (i.e. within weeks) arguing in [the Washington Case] that the term 'intumescent strip' means something contrary to that which it was asserting to the Patent Office." (ECF 79-59: S4S's ROG Resp. No. 6.) CEMCO tried advising S4S early on in discovery that its inequitable conduct claim was meritless:

> Pilz did not even use the term "intumescent strip" in any claims of his patent… Hence, the construction of "intumescent strip" by the Washington court has no bearing on any claim term in the Pilz '389 Patent.
>
> ***
>
> As you will no doubt disagree, please supplement your interrogatory responses (specifically, nos. 15 and 16) by providing the factual basis for your "inequitable conduct" claim. Please also provide the PTO rule or other legal authority supporting your contention that CEMCO committed "inequitable conduct"…

(Trojan Decl., Ex. 7: 9/1/2021 letter.) S4S was never able to explain why Judge Robart's construction of "intumescent strip" for the Klein Patents would have been material to the patentability of the Pilz '389 Patent.

Uninhibited by law or the facts in the case, S4S nevertheless moved for summary judgment, insisting CEMCO "intentionally conceal[ed] contrary positions [from the Patent Office that] CEMCO was simultaneously taking in the Washington Litigation." (ECF 74-1 at 20:19-22.) S4S still clung to this argument in its bench trial motion. (ECF 240.) The Court rejected all of S4S's arguments. (ECF 282 at 11:25 – 12:25.)

S4S's inequitable conduct claim exemplifies its over-the-top contentiousness in litigating this case, requiring CEMCO to expend considerable effort to defend the Pilz '389 Patent against S4S's frivolous inequitable conduct claim.

### c. S4S's Noninfringement Claim

S4S's non-infringement claim was a complete waste of time and money because the FRG products were simply rebranded SSR products that had already been found infringing and were enjoined in the Washington Case. (ECF 58-3, -6, -7.) Once this Court rendered its claim construction of "intumescent strip"[3] and Judge Robart found in the Washington Case that the FRG products infringed the Klein Patents, the sensible course of action would have been for S4S to concede infringement (or narrow the issue) and proceed to trial on its invalidity claims. This is why CEMCO repeatedly asked S4S to stipulate to a stay in the case, at least temporarily, so the parties would not waste resources litigating the same issues in parallel cases. (ECF 58-11.) S4S refused. (ECF 58-12.) As a result, CEMCO expended an enormous amount of time and money to prove infringement here when it had already done so in the Washington Case. CEMCO's efforts were validated by the jury's finding of willful infringement. (ECF 213.)

TROJAN LAW OFFICES
BEVERLY HILLS

---

[3] The Court agreed with CEMCO on the meaning of the critical term "intumescent strip" in the Klein Patents. (ECF 65.) The Court rejected S4S's proposed constructions of other terms. (*Id*.)

-14-

TROJAN LAW OFFICES
BEVERLY HILLS

Instead of narrowing the infringement issue, S4S actually made it much more complex than it needed to be by forcing CEMCO to prove induced infringement using the Underwriters Laboratories (UL) certifications for the FRG products. S4S could have mitigated the expenses of litigation by stipulating that the FRG products were installed according to their UL certifications, but it refused to do so. Consequently, CEMCO had to retain experts Richard Walke and Eric Bergman to explain the UL certifications and how firestopping products were installed according to them. (Trojan Decl. at ¶ 17.) Mr. Walke produced a 483-page report. (ECF 123-4.) Mr. Bergman produced a 13-page report (86 pages with exhibits). (ECF 123-3.) S4S moved unsuccessfully to exclude their testimony. (ECF 123.) As the Court heard at trial, Mr. Walke and Mr. Bergman testified at length about the firestopping technology at issue. (ECF 222.) **S4S did not present evidence at trial to rebut Mr. Walke or Mr. Bergman's testimony,** yet it still forced CEMCO to address those issues at great expense.

### 3.    Other Complicating Issues Unique to This Case

### a.    S4S's Estoppel Defenses

This case was further complicated and prolonged by S4S asserting judicial and equitable estoppel defenses. These issues were sufficiently complicated to cause the Court to bifurcate the trial so that they could be addressed separately from the above patent issues presented to the jury. (ECF 282 at 7:20 – 10:15.)

S4S argued that CEMCO should be estopped from defending the validity of the Klein Patents because CEMCO had previously taken the position that those patents were invalid in the original 2012 case. (ECF 238.) As the Court noted in the Partial Bench Verdict, this argument was predicated on an inadmissible FRE 408 email by Mr. Trojan. (ECF 282 at 8:24-26.) S4S ignored the fact that "all parties acted as if the patents were valid." (*Id*. at 9:9-12). Just as it played fast and loose with facts and evidence in pushing its invalidity, unenforceability, and non-

-15-

infringement claims, S4S was never forthright with the Court about the underlying facts in making its estoppel arguments. This consumed CEMCO's time and money.

### b.    S4S's Dispute of Assignor Estoppel

While asserting CEMCO should be estopped from defending the validity of the Klein Patents, S4S vehemently insisted *it* should not be estopped from attacking the validity of those very same patents. This, too, consumed CEMCO's time and money.

Without rehashing assignor estoppel, it suffices to point out that CEMCO's contention that S4S should have been barred from contesting the validity of the Klein Patents because of its privity with Mr. Klein has been validated. As this Court has found, "James Klein and BlazeFrame, his company, assign[ed] the Klein Patents to Defendant for a payment of $800,000 in licensing fees." (ECF 282 at 9:5-7.) S4S's stubborn insistence that Mr. Klein gave away his patents for free when all the evidence was to the contrary had only one purpose: to prolong the case. Had S4S not submitted a false declaration by Mr. Klein to create a disingenuous factual dispute to survive summary judgment, CEMCO would have been spared much of its attorneys' fees. This is yet another reason to award all attorneys' fees.

### 4.    CEMCO's Complete Victory and The *IVAC Corp. v. Terumo Corp.* Case

In *IVAC Corp. v. Terumo Corp.*, a Southern District of California court awarded attorneys' fees and expenses to IVAC based on finding "*an absence of good faith*, and as close to bad faith as one can possibly get." *IVAC Corp. v. Terumo Corp.*, No. CIV. A. 870413 B(M), 1990 WL 180202, at *1 (S.D. Cal. Aug. 9, 1990) (emphasis added). The court's closely reasoned opinion is particularly apposite to this case.

The court began by noting:

TROJAN LAW OFFICES
BEVERLY HILLS

-16-

7. …Terumo fought for, orchestrated and obtained various extraordinary procedures which drove this case into an exceptionally complicated and difficult posture. Terumo asked for and was given every possible protection.

*IVAC Corp.*, 1990 WL 180202, at \*2. As noted, S4S was given the benefit of the doubt as to assignor estoppel. (ECF 109 at 8:23-25.) It also asked for and was given a ruling to preclude any mention of the Washington Case. (ECF 160.) Having made the case more complicated and difficult than it had to be, S4S then wasted the jury's time and the Court's time with no real invalidity evidence.

The court in *IVAC v. Terumo* further noted:

8. Terumo took unmeritorious positions throughout this lawsuit in terms of strategy and decision making, motions made and evidence marshalled. **Especially noteworthy in this regard was the total failure of proof at the bench trial on the separate affirmative defense of inequitable conduct** and motion to disqualify IVAC's counsel.

*Id*. at \*2 (emphasis added). Like Terumo, S4S took unmeritorious positions throughout this lawsuit. Its invalidity and unenforceability claims required proof by the clear and convincing standard. *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2240, 180 L. Ed. 2d 131 (2011) (holding Section 282 requires an invalidity defense to be proved by clear and convincing evidence); *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." (internal quotations and citation omitted). S4S waged two years of costly litigation even though it could not even come close to meeting that standard on either of those claims.

In *IVAC v. Terumo*, the court concluded:

TROJAN LAW OFFICES
BEVERLY HILLS

-17-

10.    [E]very single one of the aforementioned extraordinary procedures was adopted at the request of the Defendant and to the detriment of the Plaintiff. Yet through it all, IVAC prevailed … **IVAC is entitled to its attorneys' fees and expenses, all of them** … **Where, as here, a patentee is required to defend its patents against a willful infringer under such extraordinary circumstances, to not give relief to the patentee would vitiate the protection Congress intended to give under the law of exceptional case**….

11.    [I]t cost IVAC more to protect its rights in this action than it recovered in damages … **For IVAC to have gone through such an exhausting, long and expensive proceeding such as this one at the insistence of Terumo, and to have won almost every issue contested at trial, and then be left with a recovery against a willful infringer which was less than its expenses, would be grossly unfair**….

*Id*. at \*2–3 (emphasis added). CEMCO finds itself in the same position as IVAC. Despite having obtained a permanent injunction in the Washington Case, CEMCO had to spend two exhausting years defending and enforcing its patents in this declaratory action. As CEMCO has won every claim, it would be grossly unfair for CEMCO to be left bearing the expenses to defeat S4S's willful infringement.

**5.    TLO Was Not Overstaffed: The Breakdown of Hours**

Even though S4S did all it could to make the case more complex, CEMCO was still able to keep expenses to a reasonable level by litigating with lean efficiency. Unlike some patent cases where law firms are overstaffed, often in a "partner-heavy" manner with many hours allocated to expensive partner billing, TLO litigated this case efficiently with a small team of three core attorneys. Mr. Trojan, the sole partner, billed only 139.53 hours over the course of two years on this case, totaling only $79,617.50. (Trojan Decl., Ex. 1a at p. 137.) The bulk of the remaining hours were billed by two experienced associates, Mr. Dang and Mr. Wong, with other associates providing miscellaneous assistance in trial preparation

TROJAN LAW OFFICES
BEVERLY HILLS

-18-

TROJAN LAW OFFICES
BEVERLY HILLS

and post-trial work. *Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2021 WL 3400608, at *8 (D. Ariz. July 20, 2021), *aff'd*, No. 21-15051, 2022 WL 4115495 (9th Cir. Sept. 9, 2022) ("[T]he Court finds … the case was not overstaffed…and the hours expended by the Moving Defendants' counsel were not excessive or unnecessary to achieve the result … in this case."); *Jefferson v. Chase Home Fin.*, No. 06–6510, 2009 WL 2051424, at *4 (N.D. Cal. July 10, 2009) ("[B]ecause the bulk of the hours spent were from a few attorneys, this does not appear unreasonable."). Therefore, the sum total of TLO's hours are reasonable.

**D.     Calculating the Lodestar: Why the Court Should Award Full Attorneys' Fees Up Through the Close of This Case Without Reduction**

CEMCO's attorneys' fees for this case are $1,028,308 to September 20, 2022. (Trojan Decl., Ex. 1a at p. 137.) Additionally, TLO has recorded $39,300 fees for work performed after that date which have yet to be billed. (*Id*. at ¶ 2.) Given the complexity of the issues, the skill and experience of CEMCO's counsel, the quality of their representation and the results they obtained, the fees are wholly reasonable.

If the lodestar amount is calculated by multiplying the total ~2,400 hours by the average billing rate of $441/hour for IP attorneys in Los Angeles (Trojan Decl., Ex. 4 at F-27), the fees would be $1,058,400, which is slightly higher than what was actually billed by TLO. This is also consistent with the AIPLA Report's finding that the average cost of a patent infringement litigation through trial in Los Angeles was $900,000, although this figure is likely low as it is based on only three respondents. (*Id*. at I-144). Since TLO's fees are more than reasonable, the Court should award the full amount of ($1,028,308 + $39,300 =) $1,067,608.

**1.     The Bases for Awarding Full Fees**

There are two bases for awarding fees for an entire case. The Federal Circuit teaches that "[w]hen infringement is found to be *willful*, the policy behind § 285 of

-19-

discouraging infringement *might justify imposing <u>all</u> of the patent owner's attorney fees on the infringer*, even if the infringer prevailed as to some of the claims in suit." *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1553-54 (Fed. Cir. 1989) (emphasis added). Aside from willful infringement, the Federal Circuit added that "litigation misconduct [c]ould justify an award of attorney fees for the entire litigation." *Id*. A full award of fees might not be warranted in only two circumstances: when litigation misconduct is the sole basis for deeming a case "exceptional," and when the injured party only partially prevails on the patent claims at issue. *Id*.

## 2. CEMCO Is Deserving of All Its Fees

The Court should award CEMCO all its fees because (1) the jury found S4S's infringement to be willful *and* (2) the Court found S4S's invalidity case to be frivolous. In other words, S4S's litigation misconduct is not the sole basis for deeming the case "exceptional." This is the rare instance where there is both litigation misconduct and willfulness. To top it off, CEMCO prevailed on all of its patent claims. The combination of all these factors justifies a full award of fees.

The Federal Circuit has noted that full fees may be awarded where the factual bases for the exceptionality finding "permeated" the entire litigation:

> The district court did not abuse its considerable discretion in awarding fees for the entire litigation. To begin, nothing in § 285 or our case law precludes such an award….The district court concluded that the factual bases for the exceptionality finding…permeated" the entire litigation. As we have recognized, full fees may be awarded in such circumstances.

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 745 F. App'x 153, 157 (Fed. Cir. 2018). S4S's invalidity claim certainly "permeated" the entire litigation;

TROJAN LAW OFFICES
BEVERLY HILLS

-20-

indeed, it was the primary purpose of this declaratory action. All of the estoppel defenses by both sides related to the invalidity claim.

Thus, an award of full fees would be fair compensation. As one Northern District of California court put it,

> [T]here is nothing in the legislative history or applicable case law to suggest that—once a determination that a case is "exceptional" has been made—courts should balk at awarding full fees. To the contrary, § 285 is a means to "*make whole* a party injured by an egregious abuse of the judicial process."

*Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015) (emphasis in original) (citing *Mathis v. Spears*, *supra*, 857 F.2d at758). A full award of fees would hardly make CEMCO whole from the damages it has suffered from S4S's willful infringement, but it would certainly go a long way in serving the compensatory purpose of § 285. *Cent. Soya Co. v. Geo. A. Hormel & Co.*, *supra*, 723 F.2d at 1578 ("The compensatory purpose of § 285 is best served if the prevailing party is allowed to recover his reasonable expenses in prosecuting *the entire action*." (quoting *Codex Corp. v. Milgo Electronic Corp.*, 541 F.Supp. 1198, 1201, 217 USPQ 878, 879 (D. Mass. 1982) (emphasis added)).

### 3. The Fees Should Not be Reduced

S4S will no doubt argue that the CEMCO's fees should be reduced because CEMCO did not win every motion in the case. However, the Federal Circuit teaches that "a case should be viewed more as an 'inclusive whole' rather than as a piecemeal process when analyzing fee-shifting under § 285." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516 (Fed. Cir. 2014).

In *Homeland Housewares, LLC v. Sorensen Rsch.*—another case in which TLO won attorneys' fees for its client—the losing-party, Sorensen, argued that the district court's fee calculation was insufficiently rooted in the conduct that the court

TROJAN LAW OFFICES
BEVERLY HILLS

-21-

found exceptional and the award should have been limited to the costs Homeland incurred in responding to specific acts of litigation misconduct. *Homeland Housewares, LLC v. Sorensen Rsch.*, 581 F. App'x 877, 881 (Fed. Cir. 2014). The Federal Circuit rejected this argument, stating: "We decline…to require such granularity from the district court, particularly because it is the 'totality of the circumstances,' and not just discrete acts of litigation conduct, that justify the court's award of fees." *Id*. Hence, this Court need not separate the wheat from the chaff by parsing the billed hours on an issue-by-issue basis.

Even if the Court were to consider the issues on which CEMCO did not prevail, the Court would see that CEMCO raised those issues in an attempt to *lessen* the costs of litigation. For example, as discussed, CEMCO sought to stay the case, asking S4S to stipulate to even a temporary stay because the issue of infringement was already working its way through the Washington Case. (ECF 58-11 at 2/4.) S4S declined. (ECF 58-12 at 3/3.) As a result, CEMCO had to incur the expenses of enforcing its Patents in this case. CEMCO's failure in trying to lower the expenses of litigation should not be held against it.

CEMCO also did not prevail on its motion to eliminate the invalidity issue by asserting assignor estoppel as discussed above. (ECF 79.) The application of assignor estoppel would have spared CEMCO the very substantial expenses of defending the validity of the Klein Patents through trial and beyond. Ironically, S4S fought hard to avoid assignor estoppel so that it could have an opportunity to convince a jury that the Klein Patents were invalid, only to show up at trial without competent evidence of invalidity. (ECF 286.) Had S4S not fought so hard to avoid assignor estoppel, it would not now be facing the prospect of paying attorneys' fees for presenting a frivolous invalidity case. S4S must reap what it has sown.

TROJAN LAW OFFICES
BEVERLY HILLS

-22-

Thus, viewing this case as a whole, rather than as piecemeal issues, the Court should not apportion or reduce claims on an issue-by-issue basis, especially because in the end CEMCO prevailed on all claims.

**E.      The Court Should Award Non-Attorneys' Fees and Costs**

**1.      The Court Should Award Disbursement Costs**

The Federal Circuit teaches that "section 285 also permits the prevailing party to recover disbursements that were necessary for the case." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1069 (Fed. Cir. 1983); *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (§ 285 held to include "disbursements, non-legal personnel, and paralegal personnel"). In addition to attorneys' fees, CEMCO requests an award of $32,694. in disbursements. which include expert and administrative costs. (Trojan Decl., Ex. 1a at pp. 135-137.)

As noted above, CEMCO retained Richard Walke and Eric Bergman as experts to explain the UL certifications and how firestopping products are installed according to them. Mr. Walke (of Creative Technologies) billed only $6,385. (Trojan Decl., Ex. 1a at pp. 135-36.) The fees for his work, including the preparation of his 483-page report, would have been far higher but the bulk of his work had already been done for the Washington Case, and was billed to that case. CEMCO only seeks costs for the work Mr. Walke performed in this case, which mainly related to the trial. (*Id*.)

As for Mr. Bergman (of Braun Intertec), he billed $11,454. (Trojan Decl., Ex. 1a at pp. 135-37.) His work was only for this case. CEMCO requests the Court to award those expert fees pursuant to its inherent authority. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) ("A district court has inherent authority to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." (internal quotations and citation omitted)).

TROJAN LAW OFFICES
BEVERLY HILLS

It is recognized that "[e]xpert witness fees are only awardable here if there is fraud on the court or an abuse of the judicial process." *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1341 (C.D. Cal. 2015), *aff'd*, 669 F. App'x 575 (Fed. Cir. 2016) (citing *Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 23 F.3d 374, 379 (Fed. Cir. 1994). CEMCO submits that S4S's complete failure to present competent evidence of invalidity or non-infringement after wasting two years of litigation qualifies as an abuse of the judicial process. CEMCO would not have incurred expert witness expenses but for S4S's frivolous claims. Since S4S's vexatious conduct and bad faith increased the cost of litigation in ways that are not compensated under § 285, CEMCO should be awarded the experts' fees. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921–22 (Fed. Cir. 2012) (affirming award of expert's fees).

The remaining disbursements ($15,588) generally include charges for e-discovery vendor services, court reporting services, travel expenses, and clerical expenses (e.g. copy charges, messenger charges) related to work on this case. (Trojan Decl., Ex. 1a at pp. 135-37.) *Mathis v. Spears*, *supra*, 857 F.2d at 759 (affirming district court's finding that "disbursements, including paralegal and law clerk time, were reasonable"). *See, e.g.*, *GT Dev. Corp. v. Temco Metal Prod. Co.*, No. C04-0451Z, 2005 WL 2138546, at *3 (W.D. Wash. Aug. 31, 2005), *dismissed*, 154 F. App'x 201 (Fed. Cir. 2005) ("The Court allows Plaintiff its reasonable costs of $13,649.95 (deposition costs), $559.50 (service), $81 (witness), $4,267.71 (travel), $3,230.84 (photocopying), $912.21 (electronic research); $356.02 (messenger); $811.65 (miscellaneous); and $50 (fee of the clerk).").

### 2. The Court Should Award Paralegal/Non-legal Costs

CEMCO also requests $4,978 in costs billed by two TLO staff members. (Trojan Decl., Ex. 1a at p. 137.) As noted, the Supreme Court has observed that "'reasonable attorney's fee' provided for by statute should compensate the work of

TROJAN LAW OFFICES
BEVERLY HILLS

-24-

paralegals, as well as that of attorneys." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109 S. Ct. 2463, 2470, 105 L. Ed. 2d 229 (1989). Ms. Michiko Speier is TLO's Office Manager with over 25 years of paralegal experience for TLO. (Trojan Decl. at ¶ 23.) She billed 24.6 hours of work over two years for this case, totaling $4,551. (Trojan Decl., Ex. 1a at p. 137.) Ms. Shirley Li is TLO's in-house accountant. (Trojan Decl. at ¶ 24.) She billed 4.5 hours totaling $427.50 for this case. (Trojan Decl., Ex. 1a at p. 137.)

### F.     Fees for This Motion Should be Included

The Court should award fees for CEMCO's briefings in support of its motion to find the case exceptional (ECF 242) as well as for this motion. *See, e.g., Hall v. City of Fairfield,* No. 10–cv–0508–DAD, 2014 WL 1303612 (E.D. Cal., Mar.31, 2014) (granting 66 hours of time expended on a fee motion, "particularly in light of the complexity of this case and the broad and far-reaching opposition to plaintiff's attorneys' fee motion filed by counsel for defendants."); *Jones v. County of Sacramento,* No. 09–cv–1025–DAD, 2011 WL 3584332, at *21 (E.D. Cal. Aug.12, 2011) (awarding attorney's fees for 76.5 hours of time spent on plaintiff's attorneys' fees motion in a civil rights action); *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2015 WL 1968388, at *3 (N.D. Cal. May 1, 2015), *aff'd*, 644 F. App'x 1010 (Fed. Cir. 2016) (finding 89 hours billed to be reasonable). Accordingly, CEMCO's fees billed in connection with the briefings for 35 U.S.C. § 285 are set forth in TLO's billing records.

### IV.    CONCLUSION

For the foregoing reasons, the Court should GRANT full attorneys' fees and costs for CEMCO in the amount of **$1,105,280**.

Respectfully submitted,

TROJAN LAW OFFICES

-25-

TROJAN LAW OFFICES
BEVERLY HILLS

by

October 24, 2022

/s/ R. Joseph Trojan
R. Joseph Trojan
Attorneys for Defendant,
CALIFORNIA EXPANDED METAL
PRODUCTS COMPANY

TROJAN LAW OFFICES
BEVERLY HILLS

-26-